53 N.J. Super. 181 (1958)
147 A.2d 83
UNITED HUNTERS ASSOCIATION OF NEW JERSEY, INC.; GLASSBORO ROD AND GUN CLUB, INC.; ELMER DEER CLUB, INC.; BURLINGTON COUNTY FARMERS AND SPORTSMEN, INC.; SQUARE CIRCLE SPORTSMEN OF CAMDEN COUNTY, INC., ALL BEING NON-PROFIT CORPORATIONS, HAROLD REISS; HERMAN PRIESTLY; JOSEPH ALAMPI, AND JAMES M. CHARLESWORTH, SUING AS INDIVIDUALS, PLAINTIFFS,
v.
SALVATORE A. BONTEMPO, COMMISSIONER OF THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY; DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT; DIVISION OF FISH AND GAME, FISH AND GAME COUNCIL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1958.
Decided December 17, 1958.
*182 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Owen N. Eisenberg and Mr. James G. Aiken argued the cause for petitioners.
Mr. William L. Boyan, Deputy Attorney General, argued the cause for defendants (Mr. David D. Furman, Attorney General of New Jersey, attorney; Mr. Boyan, of counsel; Mr. George H. Barbour, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Petitioners seek a review of the validity of a regulation adopted on October 14, 1958 by the Fish and Game Council of the Division of Fish and Game, Department of Conservation and Economic Development, hereinafter referred to as "Council," providing for a one-day deer-of-either-sex season throughout the State of New Jersey on December 20, 1958. R.R. 4:88-10. The petition for *183 declaratory judgment was filed November 18. Defendants expeditiously supplied the required agency record and filed their answer. The hearing of the appeal was given emergency scheduling in view of the imminence of the special hunting season.

I.
The regulation represents the latest attempt to deal with the recurring problem of deer management which has concerned the Council since 1949. Aware of the variant interests of different segments of our population  among them the sportsmen, farmers, landowners and conservationists  the Council has tried a number of deer management programs: fencing lands to protect farmers; establishment of feeding stations to sustain deer herds and divert them from farm crops; use of repellents; special seasons; limited area hunting; and special hunting permits. These programs have had varying degrees of success.
The various steps leading to the adoption of the regulation in question may be traced through the minutes of the Deer Committee of the Council and of the Council itself, as well as a group of exhibits which make up part of the appendix. The highlights of this record provide the background of the appeal.
On February 11, 1958 the Council adopted a motion favoring a one-day hunting season for deer of either sex for the whole State, except for the counties of Salem, Camden, Gloucester, Ocean, Cumberland, Atlantic, Burlington and Monmouth, this day to be the last day of the regular season. Deer of either sex could be hunted in Cape May for the entire season. The proposal was recommended for inclusion in the 1958 Hunting Code to be considered in August. On April 8, 1958 the proposal was amended to include Cape May among the counties where there was to be a one-day season on deer of either sex.
At its July 8 meeting the Council unanimously approved the recommendation made by its Deer Committee  based in turn *184 on the recommendation of the experts in the Division of Fish and Game  that there be an open season on deer of either sex to be held on December 20, 1958 in the area north and west of Route No. 1, from the Trenton bridge to the George Washington Bridge, as well as in Cape May County. The proposed regulation, as well as the public hearing thereon scheduled for August 12, 1958, were duly publicized.
The meeting was well attended by landowners, farmers, sportsmen and representatives of civic groups, who expressed varying opinions as to the advisability of the regulation. Those from South Jersey favored it, as contrasted with the strong sentiment voiced by North Jersey sportsmen and landowners that restricting the season to their section of the State would result in increased hunting pressure, with attendant danger to life and property, as well as the possible closing of lands to all hunting if the regulation were adopted. The New Jersey Farm Bureau, representing the farmer interest, urged the Council to adopt a special "antlerless" deer season for the entire State. Fish and Game Superintendent MacNamara reported that general field observations indicated that the herd in North and Central Jersey was about the same or slightly larger than in 1957, while preliminary checks indicated some decline in the pine areas of South Jersey.
Following the public hearing the Council, by a vote of 7-3, adopted a regulation providing for a state-wide deer-of-either-sex season on December 20. Resident sportsmen and farmer organizations of the previously unaffected areas immediately registered their disapproval. The Commissioner of Conservation and Economic Development thereupon called a special meeting of the Fish and Game Council for September 5. At that meeting representatives of South Jersey sportsmen's groups stated that there was no need or desire for an open season to be held in the area south and east of Route No. 1, excluding Cape May County; nor was there substantial evidence based on scientific investigation and research to support such a season. On this occasion Superintendent MacNamara voiced his opposition to *185 an open season in South Jersey as unnecessary and unwarranted. The upshot of the meeting was a decision to take up at the next regular Council meeting on September 16 the question of whether a new public hearing should be held to reconsider the action taken on August 12.
Superintendent MacNamara reported to the September 16 meeting that his field investigations indicated the herd in South Jersey had dropped even more than was originally thought, with the possibility of as much as a 20% drop in Burlington County. To open South Jersey to deer-of-either-sex hunting would damage the herd and set it back two years. In his opinion, a deer harvest in that area was not justified. He recommended that the best way to handle the problem would be through a permit system. Fish and Game Director Underhill also spoke, stating that while it was his original opinion that the best thing for New Jersey under the present circumstances was the proposal to hold a deer-of-either-sex season in the counties north and west of Route No. 1, he did not believe that a statewide, one-day season would decimate the herd in South Jersey. In his opinion the limiting factor on the increase in deer in that area had been illegal deer hunting, and he reasoned that the way to deal with the matter was to reduce the number of deer available to the illegal hunter by allowing a legitimate harvest. The Council concluded to hold another public hearing at which alternative propositions would be considered: a one-day deer-of-either-sex season throughout the State, or one limited to the counties north and west of Route No. 1, and Cape May.
The alternative proposals were duly advertised and the public hearing announced for October 14, 1958. A large number of speakers and organizations were heard. The State Federation of Sportsmen's Clubs favored a statewide season. The New Jersey Farm Bureau, formerly on record as favoring such a season, now suggested that it would be best for Council to rely on the advice of the technical experts in the Fish and Game Division in deciding where the deer herds were most in need of being reduced, for it now appeared that the *186 greatest need did not exist in the South Jersey counties, as shown by the statistics. Those who spoke on October 14 were fairly evenly divided in favoring or opposing a state-wide one-day season. After discussion in executive session the Council voted 6-4 for a statewide deer-of-either-sex season on December 20.

II.
In 1948 the New Jersey Legislature provided for an 11-man Fish and Game Council in the Division of Fish and Game, Department of Conservation and Economic Development, representative of the farmers, sportsmen and commercial fishermen. L. 1948, c. 448, sec. 26; N.J.S.A. 13:1B-24. The Council was given the power, subject to the approval of the Commissioner of Conservation and Economic Development, to formulate comprehensive policies for the protection and propagation of fish, birds and game animals, and for the propagation and distribution of food fish and the keeping up of the supply thereof in the waters of the State. L. 1948, c. 448, sec. 30; N.J.S.A. 13:1B-28. To Council was also entrusted the formulation of a State Fish and Game Code. L. 1948, c. 448, sec. 32; N.J.S.A. 13:1B-30. The statute provided, in pertinent part:
"For the purpose of providing an adequate and flexible system of protection, propagation, increase, control and conservation of * * * game animals, * * * and for their use and development for public recreation and food supply, the council is hereby authorized and empowered to determine under what circumstances, when and in what localities, by what means and in what amounts and numbers such * * * game animals * * * may be pursued, taken, killed, or had in possession so as to maintain an adequate and proper supply thereof, and may, after first having determined the need for such action on the basis of scientific investigation and research, adopt and from time to time amend and repeal such appropriate and reasonable regulations concerning the same, or any of them, penalties for the violation of which are prescribed by certain of the sections of Title 23 of the Revised Statutes amended herein, as it deems necessary to preserve, properly utilize or maintain the best relative number of any species or variety thereof, at the times, in the manner and to the extent hereinafter provided. The regulations so established shall be called the State Fish and Game Code. * * *"
*187 With particular reference to game animals, it was provided that
"Any regulation of the council or amendment thereto adopted pursuant to the provisions of this article which relates to * * * game animals * * *, after the council has first determined the need for such action on the basis of scientific investigation and research, may apply to all or any part of the State, at the discretion of the council, and may do any or all of the following as to any or all species or varieties of * * * game animals * * *:
a. Establish, extend, shorten or abolish open seasons and closed seasons.

* * * * * * * *
c. Establish and change territorial limits for the pursuit, taking, or killing of any or all species or varieties.

* * * * * * * *
e. Establish, change or abolish restrictions based upon sex, maturity, or other physical distinction. * * *" (L. 1948, c. 448, sec. 34; N.J.S.A. 13:1B-32.)
The Council was required to hold a public hearing on any regulation, or amendment thereto or repealer thereof, prior to final adoption, giving at least 20 days' notice of such hearing. L. 1948, c. 448, sec. 35; N.J.S.A. 13:1B-33. Section 36 of the 1948 act provided for the effective date and publication of such regulations, amendments or repealers. N.J.S.A. 13:1B-34. Any regulation, amendment or repealer was by section 37 made subject to court review. N.J.S.A. 13:1B-35.
The emphasis of section 32 of the act, N.J.S.A. 13:1B-30, relating to the State Fish and Game Code, is upon providing "an adequate and flexible system of protection, propagation, increase, control and conservation of" fish and game, and their use and development for public recreation and food supply. The Council is called upon to determine under what circumstances, when, and in what localities, as well as by what means and in what amounts and numbers such fish and game may be taken, killed or had in possession. The first decision the Council has to make in determining whether a particular regulation is necessary is whether there is any "need" for such action. Need is to be determined on the basis of "scientific investigation and research."
*188 There is no dispute that there are too many deer north and west of Route No. 1. Such studies as have been made, and the statistics of the total deer killed in the years 1947-1957, inclusive, fully establish that the number of deer has greatly increased in that area. As for the rest of the State, whatever evidence there is  the opinion of the experts in the Division of Fish and Game, the deer kill statistics, and the representations of individuals and organizations resident in the southern counties  establishes that the deer herd south and east of Route No. 1 has either remained stable or decreased. None of the experts employed by the Division is of the opinion that an open season on deer in South Jersey would be good deer management. In fact, Superintendent MacNamara, who is the person perhaps best qualified to speak on the subject, has been of the consistent opinion that, based on investigation and surveys in the field, a harvest in South Jersey would not be justified at this time and would do serious damage to the deer herd.
There is nothing in the record to establish that an open season on deer of either sex throughout the whole State is necessary to preserve, properly utilize or maintain the best relative number of deer in South Jersey. There is no scientific investigation and research to demonstrate the need for such a one-day hunting season in the South Jersey area.
At the oral argument counsel for defendants conceded that there is no need to reduce the number of deer south and east of Route No. 1. It was also admitted that the purpose of a statewide deer-of-either-sex season on December 20 was to cut down the herd north and west of Route No. 1. The argument made for such a statewide season was that unless all of New Jersey were open to deer hunting, sportsmen from South Jersey would invade the northern counties on December 20; there would be possible danger to life and property, and many landowners and farmers might close their lands to the hunters, thus defeating the deer-killing program. We cannot agree that this reason justifies the regulation adopted by Council; it has no basis in the requirements of the Fish and Game Code section of the statute, N.J.S.A. 13:1B-30.
*189 The prime statutory requisite for Council action is established need. Unless there is such a need, based on scientific investigation and research, there can be no regulation. The "protection, propagation, increase, control and conservation" of deer in South Jersey does not call for a one-day season which will impair a herd already stabilized or, indeed, diminished. All the evidence marks such an open season as the very antithesis of sound deer management for that part of New Jersey. It is without support in anything that has been presented to us and certainly lacking in anything approaching a scientific basis.
The solution to the deer problem of the area north and west of Route No. 1, and in Cape May County, must be found in other programs which the experience of the Council and its advisors indicates may be most appropriate and likely of success in the circumstances. The failure of the Division of Fish and Game to achieve success in reducing the number of deer in the northern counties would appear to be due to the lack of cooperation on the part of landowners and farmers. A more vigorous and widespread campaign of education is indicated. One or more of the methods heretofore tried by the Council would then have some hope of success. Meantime, the deer herd of South Jersey cannot be made to pay the toll in order to relieve a situation present elsewhere  nor may the sportsmen, farmers and landowners in that area.
Although ordinarily we give due consideration to the expertise of an administrative agency where there is substantial evidence to support action taken by it, we find no such evidence present here. Cf. Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501 (App. Div. 1956).
In view of our determination it is unnecessary to consider petitioners' contention that the administrative procedure followed by the Council in adopting the regulation in question deprived them of due process of law. We observe, in passing, that this argument proceeds on the assumption that the Council was acting in a quasi-judicial capacity. Such is not the fact; in dealing with the Fish and Game *190 Code the Council is a quasi-legislative body, discharging a function which before 1948 was the concern of the Legislature.
The regulation for a one-day, statewide deer-of-either-sex open season, adopted by the Council on October 14, 1958, must be set aside.