THE HUMANE SOCIETY OF THE UNITED STATES, NEW JERSEY BRANCH, INC., A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; THE SIERRA CLUB, INC., A CALIFORNIA NON-PROFIT CORPORATION; HERMINA C. M. ANDREWS AND FRED FERBER, CITIZENS AND TAXPAYERS OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS, v. NEW JERSEY STATE FISH AND GAME COUNCIL, AN AGENCY OF THE STATE OF NEW JERSEY; WILLIAM T. CAHILL, GOVERNOR OF THE STATE OF NEW JERSEY; THE SENATE OF THE STATE OF NEW JERSEY, AND ALFRED N. BEADLESTON, PRESIDENT THEREOF; THE NEW JERSEY STATE FEDERATION OF SPORTSMEN'S CLUBS, A NON-PROFIT ASSOCIATION OF THE STATE OF NEW JERSEY, AND ROBERT SMALLEY, PRESIDENT THEREOF; AND THE STATE OF NEW JERSEY, ACTING THROUGH THE AGRICULTURAL CONVENTION OF THE STATE OF NEW JERSEY, A PUBLIC BODY ORGANIZED UNDER THE REVISED STATUTES OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued April 27, 1976—Decided July 15, 1976.

*Mr. Jay D. Fischer* argued the cause for appellant N. J. State Federation of Sportsmen's Clubs (*Mr. Fischer* and *Mr. Leo J. Barrett,* attorneys).

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for appellants N. J. Fish & Game Council, William T. Cahill, Governor of the State of New Jersey, the Senate of the State of New Jersey, Alfred N. Beadleston, and the State of New Jersey acting through the

Agricultural Convention of the State of New Jersey (*Mr. William F. Hyland*, Attorney General of New Jersey, attorney; *Mr. Skillman* of counsel; *Mr. John M. Van Dalen*, Deputy Attorney General, on the brief).

*Mr. Peter A. Buchsbaum*, Assistant Deputy Public Advocate, argued the cause for respondents (*Mr. Stanley C. Van Ness*, Public Advocate, attorney).

*Mr. Steven E. Pollan* submitted a brief on behalf of *amicus curiae* Common Cause (*Messrs. Pollan and Pollan*, attorneys).

*Mr. Edward J. Insley* submitted a brief on behalf of *amicus curiae* N. J. Council of Churches.

The opinion of the Court was delivered by

CLIFFORD, J. This case presents a challenge, on equal protection and due process grounds, to the constitutionality of *N. J. S. A.* 13:1B–24. That enactment sets forth the qualifications and recommendation procedures for appointment to the Fish and Game Council, an appointive eleven member body within the Division of Fish, Game and Shell Fisheries of the Department of Environmental Protection. The trial court (which heard the case on what it called "a limited stipulation of facts and legal argument"), in a formal opinion later clarified by a supplemental letter to counsel and subsequent order, held the statute unconstitutional, 129 *N. J. Super.* 239 (Ch. Div. 1974). While defendants' appeal was pending in the Appellate Division, this Court granted certification directly to the Chancery Division, 69 *N. J.* 398 (1975). We conclude the statute survives the constitutional attack made here and therefore we reverse.

I

The Fish and Game Council is invested with certain regulatory powers aimed at protecting and developing an

adequate supply of fish and game for recreational and commercial purposes. These powers are expressed primarily by the Council's determinations as to when and where in the state hunting and fishing shall take place, and which fresh water fish, game birds, game animals, and fur bearing animals may be taken and in what numbers. The wildlife thus regulated are those animals which are the focus of the sports of hunting and fishing.[1] In addition, the Council supervises a program of wildlife propagation, the expenses of which are supported by fees for hunting and fishing licenses paid for by sportsmen and commercial fishermen.

Plaintiffs are two non-profit organizations, the Humane Society, New Jersey Branch, and the Sierra Club, and two individuals who are taxpayers and citizens of New Jersey. They contend that the Fish and Game Council membership statute is constitutionally defective because it enumerates three classes of appointees to the Council — sportsmen, farmers, and commercial fishermen — and excludes from appointment any person who is not recommended to the Governor by either the State Agricultural Convention or the New Jersey State Federation of Sportsmen's Clubs (hereafter Sportsmen's Federation).

The statutory provisions for membership and appointment are as follows:

13:1B–24. Fish and Game Council; members; terms.

There shall be within the Division of Fish and Game, a Fish and Game Council which shall consist of eleven members, each of whom shall be chosen with due regard to his knowledge of and interest in the conservation of fish and game. Each member of the council shall be appointed by the Governor, with the advice and consent of the Senate. Three of such members shall be farmers, recommended to the Governor for appointment to the council by the agricultural convention held pursuant to the provisions of article two of chapter one of Title 4 of the Revised Statutes; six of such members shall be

---

[1] Endangered species are separately regulated by statute, see *N. J. S. A.* 23:2A–1 *et seq.* and do not come within the scope of the Council's power and duties.

sportsmen, recommended to the Governor for appointment to the council by the New Jersey State Federation of Sportsmen's Clubs; and two of such members shall be commercial fishermen.

It is stipulated that the individual plaintiffs, the members of the Humane Society, New Jersey Branch, and the Sierra Club are all interested in and knowledgeable about the conservation of fish and game. As the statute indicates, although sponsorship by the Sportsmen's Federation and the State Agricultural Convention is essential to appointment to the Fish and Game Council, membership in those organizations is not. Plaintiffs enjoy the state's lands and wildlife for purposes other than hunting, fishing, and farming. For personal and policy reasons they cannot or will not become affiliated with or seek membership in the Sportsmen's Federation, nor do they at all suggest that they qualify, by occupation or otherwise, as farmers.[2] Plaintiffs contend, moreover, that any such affiliation would not serve to give them an effective voice in making or becoming the subject of recommendations to the Governor. In fact, the State conceded at oral argument that as a practical matter all appointees to the Council have been members of either the Sportsmen's Federation or the Agricultural Convention.

---

[2] Although neither side contends that the term "sportsman" per se excludes environmentalists from its scope, plaintiffs point out that of fifteen Sportsmen's Federation officers or former officers responding to interrogatories, only one did not engage in hunting or fishing activities. Of 316 member clubs listed in response to interrogatories, 212 were named Rod and Gun Club or Trap Shooting Club. Only five of the listed clubs had titles suggesting purposes unrelated to hunting and fishing. One response by the Federation states that many member clubs include campers, hikers, and backpackers in their numbers but that no records are kept with reference to these non-hunting and fishing activities.

The State Agricultural Convention, held puursant to statute, *N. J. S. A.* 4:1-5, is an annual meeting of delegates from county agricultural boards and private agricultural groups. Its membership elects by majority vote three farmers for recommendation to the Fish and Game Council. As such, the Agricultural Convention would not be the appropriate means for plaintiffs to seek access to the Council.

The essence of plaintiffs' challenge is that they are practically barred from participating in the Fish and Game Council's decisions which affect plaintiffs' recreational and educational activities. They characterize their exclusion from the ranks of those eligible for appointment as a denial of equal protection. Additionally, they contend that the statutory delegation of the power of appointment to a private organization such as the Sportsmen's Federation violates due process. The trial court's opinion upheld plaintiffs' position and ruled that a person otherwise qualified may not statutorily be excluded from appointment to the Fish and Game Council on the grounds that he or she is not either a sportsman, a farmer, or a commercial fisherman. 129 *N. J. Super.* at 246. By the order following this formal opinion and supplemental letter, referred to above, the trial judge also declared unconstitutional those provisions of *N. J. S. A.* 13:1B-24 which channel appointments to the Council through the Sportsmen's Federation and the Agricultural Convention. Finally, he enjoined defendants from acting pursuant to the membership statute, with the result that the terms of five of the eleven Council members have expired and are being filled by holdover appointees.

## II

It must be stressed here that plaintiffs have not alleged malefaction on the part of the Council members, past or present, nor has the inherent subject of their activities — namely, hunting and fishing in their recreational and commercial aspects — come under attack. Nor do plaintiffs condemn the qualifications the statute articulates for appointment to the Council, for they agree Council members should be chosen "with due regard to [their] knowledge of and interest in the conservation of fish and game." What rankles is the selection process, which operates so that the individual plaintiffs and the members of the organizational plaintiffs, all of whom possess the statutory qualifications for appointment, are excluded.

■ The trial court correctly applied to the Council membership statute the minimum scrutiny, rational basis test, which looks to whether a state of facts exists that can reasonably justify the legislative scheme. *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 *U. S.* 719, 93 *S. Ct.* 1224, 35 *L. Ed.* 2d 659 (1973). There the Supreme Court rejected an equal protection challenge directed against provisions in the California Water Code which established voter qualifications for electing the directors of water storage districts in the state. Only landowners were eligible to vote, and the votes were apportioned according to the assessed valuation of the land. The classification was found acceptable despite the fact that it impinged on the franchise, because landowners as a class bore the entire burden of the costs of the water district and California "could rationally conclude that they, to the exclusion of residents, should be charged with responsibility for [the district's] operation." 410 *U. S.* at 731, 93 S. Ct. 1231, 35 *L. Ed.* 2d at 668.

Here, as in *Sayler*, a particularized unit of government is implicated and the persons who achieve office do not have plenary powers. The Fish and Game Council is a specialized body, with statutorily prescribed duties and statutory limits on its powers and activities. Its members serve by appointment, not by election. Access to the Council cannot be said to be entwined with the fundamental right to vote, which would call for this Court to use the stricter, close scrutiny standard of review and would rebut the presumption of validity the statute now enjoys. *Bullock v. Carter*, 405 *U. S.* 134, 92 *S. Ct.* 849, 31 *L. Ed.* 2d 92 (1972) ; *Kramer v. Union Free School District*, 395 *U. S.* 621, 89 *S. Ct.* 1886, 23 *L. Ed.* 2d 583 (1969).

The burden, then, is on plaintiffs to demonstrate that the impact upon them of the Fish and Game Council's decisions is so significant and substantial as to render a statutory scheme which effectively bars them from appointment to the Council patently arbitrary and unreasonable. Only

upon such a showing can their non-membership in this specialized body assume the dimensions of a constitutional deprivation.

### III

It is axiomatic that the Fourteenth Amendment does not forbid classifications per se.

Equal protection does not require that all persons be dealt with identically. If there is some reasonable basis for the recognition of separate classes, and the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the constitution is not offended. [*N. J. Chapter, American Inst. of Planners v. N. J. State Bd. of Planners*, 48 *N. J.* 581, 601, appeal dismissed, 389 *U. S.* 8, 88 *S. Ct.* 70, 19 *L. Ed.* 2d 8 (1967).]

 The Legislature may prescribe such qualifications as reasonably relate to the demands of a specialized office. See *Alongi v. Schatzman*, 57 *N. J.* 564, 577–78 (1971); *cf. Wurtzel v. Falcey*, 69 *N. J.* 401 (1976). Logic is not offended by the classes included in the challenged statute. We have already stressed the discrete character of the Fish and Game Council, charged as it is with certain responsibilities and powers pertinent to ensuring the statutory objective of an abundant supply of game for recreational and commercial hunting and fishing. Sportsmen, farmers, and commercial fishermen feel directly the impact of decision-making in this area and are likely to have the necessary expertise to make the required decisions competently.

The statute specifies that six of the eleven Council members must be sportsmen. Assuming this category consists of the hunters and fishermen of the state, it is difficult to conceive of a group with a keener interest in maintaining a plentiful supply of game, in developing regulations to insure safety in hunting, and in overseeing the operations of the state's hatching and game farm and its stocking activities. Farmers, who are represented by three Council members, own the major part of the hunting lands in the State. Thus, as property owners, they are directly affected by the

Council's activities. They are also in an advantageous position to recognize the point at which overpopulation in a species of game animal has become a matter of concern. The Council's power to regulate animals which menace agricultural crops, see *N. J. S. A.* 23 :4–63.3, further justifies representation by farmers. To the extent that sportsmen and farmers have special interests which may at times conflict, the presence of both groups on the Council is at once a rational legislative decision and a desirable one. For the reason it is appropriate that these Council members be recommended to the Governor by organizations consisting of their peers.

Two commercial fishermen are appointed to the Council directly by the Governor, and their method of selection cannot be said to offend the due process principles plaintiffs advance. Regarding this classification, however, plaintiffs point out that inasmuch as the Council has jurisdiction over fresh water fishing and there is little commercial fresh water fishing in New Jersey, commercial fishermen therefore have only a tenuous connection with the purposes of the statutory scheme. That appointment is specified from this group rather than from the general public, however, is not necessarily arbitrary and capricious: the Council issues licenses to fishermen who wish to fish commercially in those waters of ·the Atlantic Ocean that are within the state's jurisdiction, see *N. J. S. A.* 23 :3–41 and *N. J. S. A.* 23 :3–47. Additionally, it is logical to assume that commercial fishermen have, by virtue of their trade, an overall expertise that commends their membership on the Fish and Game Council. The fact that the Council's minimal control of salt-water fishing has no significant commercial impact obviates any suggestion that the two commercial fishermen who serve on it could use their office to promote directly their own or the industry's economic well-being over the public interest.

## VI

Having determined that there is a reasonable basis for the statutory inclusion of sportsmen, farmers, and com-

mercial fishermen, and giving all due regard to plaintiffs' articulated concerns, we cannot find that plaintiffs' exclusion is of sufficient import to offend the Fourteenth Amendment. While neither side evinced any certainty at oral argument that the term "sportsman" does not include an environmentalist, nevertheless even if we assume that the classification contemplates only hunters and fishermen, the statutory scheme is not unduly stringent. The legislative arrangement suggests that the numbers of sportsmen for purposes of the appointment process should be substantial, inasmuch as eligibility for membership in the Sportsmen's Federation is provided to every duly organized sportsmen's club in the state with twenty-five or more members specifically for the purpose of permitting "the broadest possible representation of sportsmen in the making of recommendations for appointment of sportsmen to membership in the council * * *." *N. J. S. A.* 13:1B–25.

Plaintiffs have elected not to align themselves with the Sportsmen's Federation, a choice that assuredly is theirs to make. However, they have neither alleged nor proven that their interests are antithetical to the Federation or that, should they attempt to join, they would be rejected.[3] It is perfectly reasonable, therefore, to view their continued absence from the Council as a product of plaintiffs' own alienation rather than as the result of a statutory exclusion.

More compelling, however, is the fact that the dominion of the Fish and Game Council is so confined. The wildlife it regulates, as indicated, are limited specifically to those species which are commonly the subjects of hunting and fishing, and even then the regulatory power is restricted.

---

[3] *N. J. S. A.* 13:1B–25 provides for a review by the State Federation of any refusal by a county federation to accept for membership an eligible sportsmen's club. According to the Federation's constitution, "Any citizen of good character residing in the State of New Jersey at the time of application shall be eligible to hold Associate Membership upon compliance with the provisions of the Constitution and By-Laws."

See, *e. g., N. J. S. A.* 23:4–49, defining game birds to include twenty-two species; *N. J. S. A.* 23:4–1, prohibiting hunting of most of these birds except in open season fixed by federal regulations. See also *N. J. S. A.* 23:4–18. The hunting season and, where applicable, the bag limits for certain birds and small game, *N.'J. S. A.* 23:4–1, *N. J. S. A.* 23:4–2, and *N. J. S. A.* 23:3–32, certain fur-bearing animals, *N. J. S. A.* 23:4–39, deer, *N. J. S. A.* 23:4–43, foxes, *N. J. S. A.* 23:4–58.1, and certain fish, *N. J. S. A.* 23:5–1, are set forth by statute where no provision in these instances otherwise appears in the State Fish and Game Code. The Council is responsible for issuing the regulations which comprise the Code, *N. J. S. A.* 13:1B–30. While it enjoys, in the discharge of this function, a certain flexibility permitting enlargement or limitation of the statutory designations, nevertheless the Council at all times must condition such departures on the essential purpose its regulations are designed to serve — the maintenance of a plentiful supply of game and fish for recreational hunting and fishing. Notice and public hearings as well as scientific investigation and research must precede adoption of and any changes in Code regulations and amendments thereto, *N. J. S. A.* 13:1B–31 *et seq.* The statutory scheme expressly subjects "[a]ny regulation, or amendment thereto, or repealer thereof" to appropriate judicial review. *N. J. S. A.* 13:1B–35.

The Council does not have unfettered authority to decide that hunting or fishing will take place on private property, see *N. J. S. A.* 23:7–1, or on state-owned lands. As to the latter, co-existing with the Division of Fish, Game and Shell Fisheries in the Department of Environmental Protection is the Division of Parks, Forestry and Recreation, *N. J. S. A.* 13:1B–15.100 *et seq.,* which has its own Council. This likewise is made up of eleven members, who recommend programs and policies concerning the acquisition, development, use and improvement of state parks, forests, and recreation areas. *N. J. S. A.* 13:1B–15.104. The competitive interests of the respective Councils are served by the

legislative scheme, and it is fair to say that the interests of plaintiffs in enjoying the state's lands and wildlife for purposes other than hunting and fishing are represented in part by the Parks, Forestry and Recreation Council.

In summary, what authority the Fish and Game Council has been given by *N. J. S. A.* 13:1B–30, empowering that body to determine "under what circumstances, when and in what localities, by what means and in what amounts and numbers" fish and game may be taken, must be said to be circumscribed by other agencies, see *n.* 5 *infra,* and existing statutory norms. That authority is limited as well by the mandate that the Council direct its regulations toward providing "an adequate and flexible system of protection, propagation, increase, control and conservation" of fish and game. birds and animals. The consignment of the specialized powers and duties flowing from this legislative scheme to so-called special interest groups has a rational basis,[4] because these entities are most directly affected by the Council's regulations and possess the requisite expertise for achievement of the statutory objective.

Furthermore, the statute passes muster even were we to go beyond the traditional rational basis test and apply the means focused test, which this Court has used to determine constitutional challenges asserting interests more fundamental than the ones advanced by these plaintiffs. See *Bor. of Collingswood v. Ringgold,* 66 *N. J.* 350 (1975), appeal dismissed, —— *U. S.* ——, 96 *S. Ct.* 2220, ——, 48 *L. Ed.* 2d 826, 44 *U. S. L. W.* 3684 (1976); Gunther "The Supreme Court, 1971 Term — Foreword: In Search of Evolving Doctrine

---

[4]This concept is not unique. The professional boards provided for by Title 45 of the Revised Statutes almost uniformly have a majority membership made up of representatives of the regulated professions. See, *e. g., N. J. S. A.* 45:9–1 (doctors); *N. J. S. A.* 45:11–24 (nurses). Measured against this legislative scheme, which entrusts to interested parties rather than the general public the management of particular professions, the Fish and Game Council's membership statute is neither untoward nor surprising.

on a Changing Court: A Model for a Newer Equal Protection," 86 *Harv. L. Rev.* 1, 22–24 (1972). The governmental interest in establishing regulations to ensure a plentiful supply of game animals for consumption and sport is suitably furthered by placing a degree of regulatory control in the hands of a Fish and Game Council composed of sportsmen, farmers, and commercial fishermen. Opening the Council's membership to persons with differing philosophies might reflect the art of public relations, but it is not a constitutional necessity.

V

Finally, plaintiffs contend that the role played by the Agricultural Convention and the Sportsmen's Federation in recommending nine of the eleven appointees amounts to an "inbred nominating process" offensive to due process because it produces a Council incompletely representative of the public interest. See *Lanza v. Wagner,* 11 *N. Y.* 2d 317, 229, *N. Y. S.* 2d 580, 183 *N. E.* 2d 670 (Ct. App.), appeal dismissed and *cert.* den., 371 *U. S.* 74 and 901, 83 *S. Ct.* 177 and 205, 9 *L. Ed.* 2d 163 and 164 (1962).[5]

---

[5]We note that an appointive scheme relating to a statutory body known as the New Jersey Natural Lands Trust, *N. J. S. A.* 13:1B–15.119 *et seq.*, bears striking similarity to the appointment methods plaintiffs finds offensive in *N. J. S. A.* 13:1B–24. The Natural Lands Trust, which has trusteeship powers relating to natural areas preservation, *N. J. S. A.* 13:1B–15.122 and *N. J. S. A.* 13:1B–15.123, is composed of eleven members, six of whom are appointed by the Governor "from a list of candidates nominated by a nominating committee provided by a group of nonprofit New Jersey corporations having open space preservation or environmental education as their corporate purpose, * * *." *N. J. S. A.* 13:1B–15.120. The five remaining trustees are *ex officio*. Plaintiffs, particularly the Sierra Club, Inc., have interests analogous if not identical to the corporate purposes defined in that statute. The same arrangement, therefore, that plaintiffs characterize as essentially a sword against their interests operates as a shield in this context. As this opinion undertakes to demonstrate, seen either way such an appointment process is constitutional.

■ The delegation of nominating authority to private persons is not in derogation of the constitution where that document is silent as to the appointment of public officials. *Driscoll v. Sakin,* 121 *N. J. L.* 225 (Sup. Ct. 1938), aff'd. 122 *N. J. L.* 414 (E. & A. 1939) Even delegation of legislative authority to private parties may withstand constitutional challenge if sufficient safeguards exist to prevent an arbitrary concentration of power in persons or groups motivated by self interest. "The test is whether the particular delegation is reasonable under the circumstances considering the purpose and aim of the statute." *Male v. Renda Contracting,* 64 *N. J.* 199, 201, *cert.* den., 419 *U. S.* 839, 95 *S. Ct.* 69, 42 *L. Ed.* 2d 66 (1974).

■ In *Male, supra,* a statute which fixed the wage rate for public works was geared to wages for particular crafts or trades fixed by collective bargaining agreements in the locality. We noted that the parties who negotiate these agreements were competing groups with opposing economic positions, so that the outcome of their negotiations reflected a balance of interests. While it was alleged in *Male* that the delegation created a danger of self-motivated action, no actual harm to the public good was shown. *Id.* Here it has not even been alleged.[6] Our review of the limitations on the Fish and Game Council's authority, which limitations serve to promote other interests, convinces us that there does not reside in that body the potential for such aggrandizement of the Council members' interests as would be repugnant to due process.

Finally, we record our recognition of the fact that the Council's operations bear on the public interest. That being so, the present composition of the Council may be perceived as less than ideal. While the cure does not lie in opening

---

[6]Had there been such an allegation, we might be obliged to consider an argument based on the public trust doctrine. See *Bor. of Neptune City v. Bor. of Avon-by-the-Sea,* 61 *N. J.* 296 (1972). As it is, the concept has no identifiable nexus with the legal issues under consideration.

up Council membership to other public interest groups in addition to farmers, sportsmen and commercial fishermen, we acknowledge that a better balance would be achieved by the presence of some public members. Legislative action towards that end would be salutary.

## VI

The judgment of the trial court is reversed. The injunction is dissolved, and appointments to fill the vacancies now held by holdover appointees may be made forthwith consistent with the existing legislative formula.

PASHMAN, J. (dissenting). The majority reverses a trial court determination in this case, and upholds the appointive membership scheme of the State Fish and Game Council against constitutional challenge. That scheme, which is statutorily-prescribed by *N. J. S. A.* 13:1B–24 provides:

There shall be within the Division of Fish and Game, a Fish and Game Council which shall consist of eleven members, each of whom shall be chosen with due regard to his knowledge of and interest in the conservation of fish and game. Each member of the council shall be appointed by the Governor, with the advice and consent of the Senate. Three of such members shall be farmers, recommended to the Governor for appointment to the council by the agricultural convention held pursuant to the provisions of article two of chapter one of Title 4 of the Revised Statutes; six of such members shall be sportsmen, recommended to the Governor for appointment to the council by the New Jersey State Federation of Sportsmen's Clubs; and two of such members shall be commercial fishermen.

The 11-member panel which the statute creates draws its membership from three designated classes which have commercial and recreational interests in hunting and fishing. Accordingly, the statute allots six, three and two representatives to "sportsmen," "farmers," and "commercial fishermen," respectively. The statute also delegates exclusive nomi-

nating authority for the first two groups to the New Jersey State Federation of Sportsmen's Clubs (Sportsmen's Federation) and the State Agricultural Convention.

Plaintiffs represent organizations and individual citizens and taxpayers of New Jersey who are vitally concerned with conservation of the environment. In challenging the composition and selection of the Fish and Game Council, they derive standing from their interest in environmental conservation; this concern clearly falls within the statutory ambit of the Council and is directly affected by its decisions.

In pressing their claim, plaintiffs assert that the appointment scheme in *N. J. S. A.* 13 :1B–24 does not acknowledge their distinct interests and totally excludes them from representation on the Council. In particular, they contend that the statutory delegation of exclusive nominating authority to the State Agricultural Convention and the Sportsmen's Federation creates an "inbred nominating process," whose practical operation limits Council nominations to members of the nominating groups. Plaintiffs do not challenge either the rights or the qualifications of the present membership of the Council. Nor do they contend that any of the 11 members who presently comprise the Council lack the requisite "knowledge of and interest in the conservation of fish and game." *N. J. S. A.* 13 :1B–24. In addition, plaintiffs frankly concede that their objections to the statutory scheme would be obviated if they joined either of the designated organizations. Nonetheless, because of philosophical differences which distinguish their interests from those espoused by the Sportsmen's Federation and the State Agricultural Convention, plaintiffs have declined such affiliation. While they seek representation on the Council, plaintiffs do not question the rationality or legitimacy of appointing representatives of the designated groups to the Council. What they do challenge, however, is the arbitrariness inherent in a scheme which effectively limits appointments to representatives of those

groups only to the exclusion of all other interested parties.[1] Because I find the discriminatory impact of this statutory scheme to be arbitrary and unreasonable and because I feel that plaintiffs deserve independent representation on the Council, I dissociate myself from the majority and would affirm the trial court's decision.

The trial court found merit in plaintiffs' contentions and held that the State Fish and Game Council cannot exclude an otherwise qualified individual from membership in that body solely because he is not a sportsman, farmer or commercial fisherman. *Humane Soc'y of U. S. v. State Fish & Game Council*, 129 *N. J. Super.* 239 (Ch. Div. 1974). Although his opinion considered a panoply of issues, Judge Ciolino specifically found that there was insufficient reason to exclude plaintiffs from Council membership. In this regard, he stated:

The question to be determined is, can one reasonably conceive of any state of facts justifying the exclusion of a person from consideration for appointment to the Fish and Game Council who is knowledgeable and interested in conservation of fish and game simply because he isn't either a sportsman, farmer or commercial fisherman? Further, is it rational for the state to exclude a person from consideration for appointment and does such exclusion reasonably serve any legitimate objective, or is it arbitrary?

It is the opinion of this court that such exclusion is arbitrary and does not reasonably relate in any way to the office in question. The crucial factor determinative of one's qualification for membership of the Fish and Game Council is one's "knowledge of and interest in the conservation of fish and game." *N. J. S. A.* 13:1B–24. There ap-

---

[1] In this regard, the delegation to the defendant-Council may readily be distinguished from the delegation to representative bodies of regulated professions. *See, e. g., N. J. S. A.* 45:9–1 (doctors), *N. J. S. A.* 45:11–24 (nurses). Unlike the delegations by those statutory provisions, the delegation under *N. J. S. A.* 13:1B–24 is not made to a professional body which is charged with the maintenance of professional standards. Similarly, the delegation to the Fish and Game Council does not concern a particularly esoteric subject. Thus, unlike the delegations to the medical and nursing professions the delegation under *N. J. S. A.* 13:1B–24 does not concern a matter for which knowledge is solely possessed by one particular group.

pears to be no reason in logic as to why such person must.be either a sportsman, farmer or commercial fisherman. [129 *N. J. Super.* at 245–46].

I fully agree with the trial judge's statement of the issue and with his conclusion that the classification in the statute is arbitrary. The majority today, however, rejects this rational and just result. In part, the Court bases its decision on plaintiffs' failure to demonstrate that "the term 'sportsman' does not include an environmentalist." *Ante* at 575. While information clearly within the realm of judicial notice should suggest the basis for this distinction, differences between the interests advanced by plaintiffs and those of the Sportmen's Federation were clearly established at trial. In fact, not only are plaintiffs' concerns distinguishable from those of the groups which are represented on the Council, but in certain instances they may be diametrically opposed. Sportsmen and environmentalists often (though not always) operate from different premises. The Council through its component organizations, for example, attempts to meet its conservation mandate solely by the regulation of hunting and the propagation of different species of animals. Plaintiffs, on the other hand, view conservation in terms of a broader ecosystem within which game animals and their relative numbers are merely singular components. This broader view of conservation is reflected in the greater range of activities in which plaintiffs participate. These activities, which include backpacking, camping and birdwatching are clearly affected both by the decisions of the Fish and Game Council and by the often adverse interests of the groups which are now represented on the Council. Thus, it would be meaningless for plaintiffs to affiliate themselves with groups whose interests they do not share. As the trial court correctly observed:

Your position as I understand it as to the corporate parties, is that they have a different policy, or they may have a different policy. Therefore, they do not wish to affiliate themselves with the Federation.

> And as to the individual [plaintiffs], that they do not wish to join because of their own personal feelings; and in addition thereto, they feel joining would not accomplish any purpose for them.

Therefore, to accept the majority's reasoning that plaintiffs' interests may be represented by the council because they are "sportsmen," is like a suggestion that an umpire's decision may be equally amenable to the affected parties because they all happen to be "baseball players."

In the final analysis, the majority itself concedes that this reasoning is of little moment. As it frankly observes, "even if we assume that the classification contemplates only hunters and fishermen, the statutory scheme is not unduly stringent." *Ante* at 575. I could only accept this jump in logic if I were prepared to abandon my position that the classifications are arbitrary in both their design and their practical effect. By delegating the nominating power to specific groups, none of whose interests coincides with those of plaintiffs, the appointment scheme in *N. J. S. A.* 13:1B–24 effectively precludes plaintiffs from ever achieving representation on a Council whose decisions directly affect their interests and activities. Surely, no scheme, statutory or otherwise, could operate more stringently than that! This situation, as the majority readily admits, "may be less than ideal." *Ante* at 579. Although it questions the necessity for affording representation to other particular special interest groups, the majority recognizes that representation of the general public would promote "a better balance" on the Council. This recognition, however, is unaccompanied by appropriate judicial action to implement its objective, and, in effect, perpetuates the existing system for Council selection. Moreover, I am not comforted in this regard by the majority's observation that "although sponsorship by the Sportsmen's Federation and the State Agricultural Convention is essential to appointment to the Fish and Game Council, membership in those organizations is not." *Ante* at 570. As both the State and the majority acknowledge, *ante* at 570–571, nominations presented by the Sportsmen's

Federation and the State Agricultural Convention have been limited to their own membership. In light of the divergent and potentially conflicting interests which are held by plaintiffs, I cannot rely on the hypothetical hope that their members will ever be nominated to the Council under the existing statutory scheme.

Even if plaintiffs' interests are not of constitutional dimension, as defendants and the majority contend, basic principles of fairness require that they be protected in the instant case. It has long been recognized in this State that where the Legislature prescribes qualifications for public office, even in the absence of a constitutional provision, it must not arbitrarily exclude any individual or group of individuals without regard to the pertinent qualifications. *Stothers v. Martini,* 6 *N. J.* 560 (1951); *Gansz v. Johnson,* 9 *N. J. Super.* 565 (Law Div. 1950). The standard against which all qualifications and exclusions must be measured is that of reasonableness. *Stevenson v. Gilfert,* 13 *N. J.* 496 (1953); *Gangemi v. Rosengard,* 44 *N. J.* 166 (1965). This standard remains immutable regardless of whether our consideration is a matter of "constitutional necessity" or "public relations."

Applying this standard to the present case, I am unable to conclude that the restrictions in *N. J. S. A.* 13:1B–24 are anything but arbitrary. Since the relevant criterion in that provision requires only that a member of the Fish and Game Council have "knowledge of and interest in the conservation of fish and game," it makes little sense to condition membership on sponsorship by any given group. This is not to say that the recommendations of groups such as the State Agricultural Convention and Sportsmen's Federation should not be considered or accorded weight in evaluating a candidate's credentials. Nonetheless, I cannot sanction a procedural practice which delegates the nominating power to a select circle of organizations to the exclusion of all other groups

who demonstrate a sincere interest in the relevant subject matter.

I especially cannot sanction this practice where its practical effect will deprive an organization, whose interests are intimately affected by the decisions of the Fish and Game Council, of any chance to achieve the representation which it needs to protect those interests. Even if plaintiffs' interests did not conflict with those advanced by defendants, I could not approve of a scheme which forecloses from the chambers of authority a viewpoint which clearly promotes the very interests envisioned by *N. J. S. A.* 13:1B–24. While I recognize that groups such as the Sierra Club or the Humane Society occupied a less prominent position in 1948 when this statute was enacted, this is no reason to perpetuate a system which is blind to its own shortsightedness.

Accordingly, I would affirm the judgment of the trial court.

*For reversal* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD. —6.

*For affirmance* — Justice PASHMAN—1.