860 A.2d 463 (2004)
372 N.J. Super. 598
U.S. SPORTSMEN'S ALLIANCE FOUNDATION; New Jersey State Federation of Sportsmen's Clubs; Gerald McCusker; Anthony Cali; and Edward O'Sullivan, Appellants,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; Bradley M. Campbell, in his capacity as NJDEP Commissioner; New Jersey Division of Fish & Wildlife; and Martin J. McHugh, in his capacity as Director of the Division, Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2004.
Decided November 16, 2004.
*464 William P. Horn (Birch, Horton, Bittner and Cherot), of the District of Columbia bar, admitted pro hac vice, argued the cause for appellants (McGimpsey & Cafferty, Somerset, and Mr. Horn, attorneys; Arlene M. Turinchak and Thomas J. Cafferty, Somerset, on the brief).
Barbara Conklin, Deputy Attorney General, argued the cause for respondents (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Rachel Horowitz, Dean Jablonski and Ms. Conklin, Deputy Attorneys General, on the brief).
Before Judges SKILLMAN, PARRILLO and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the Commissioner of Environmental Protection has statutory authority to direct employees of the Division of Fish and Wildlife not to issue permits for a hunt authorized by the Fish and Game Council. We conclude that the Commissioner lacks authority to subvert the Council's authorization of a hunt by such a directive.
In 2003, the Fish and Game Council authorized the first bear hunt in New Jersey since 1970. The Council's decision to authorize this hunt was based on reports of bears colliding with motor vehicles, destroying beehives and agricultural crops, killing livestock and pets, entering homes and attacking humans and the Division's estimate that there are more than 3,000 bears in the State, primarily in the northwestern counties. The Division processed applications for permits to participate in the hunt and ultimately issued 5,450 permits for a bear hunt that coincided with the deer hunting season. This hunt, which was limited to the area north of Route 78 and west of Route 287, resulted in the killing of 328 bears.
After the 2003 hunt, the Division prepared a status report that analyzed the results of the hunt and other strategies for avoiding dangerous bear-human interactions, including the prevention of both intentional and unintentional bear feeding. This report estimated that there were 1,490 bears in a 580-square mile section of the bear's habitat in northwestern New Jersey. The report did not undertake to estimate the bear population in the remainder of that habitat. The report concluded:
The 1997 [Black Bear Management Plan] set a target density of 1 bear/2.5 sq. miles in order to minimize conflicts and to manage New Jersey bears consist[ent] with target densities of adjacent states with similar habitat. The results of this most recent population analysis and the results of the 2003 bear hunting season indicate that the current *465 population can support a recreational hunting season.
In early 2004, the Council considered a proposal to authorize another bear hunt. On March 5, 2004, the Commissioner sent a letter to the Council expressing his opposition to this proposal. The Commissioner acknowledged that the Division's report "documents a `huntable' population  i.e. a population that can be hunted without endangering the viability or long-term population of bears in New Jersey." However, he stated that "[t]he data does not currently document the rapidly expanding population supposed at the time of the last game code adoption." The Commissioner also expressed the view that "administration of the hunt in the context of substantial public controversy severely limits the staff time and resources available for public education, bear feeding-ban enforcement, and development of immunocontraceptive alternatives." The Commissioner appeared before the Council on March 9, 2004, to expand upon his reasons for opposing another bear hunt.
Despite the Commissioner's opposition, the Council proposed adoption of a regulation establishing a Fish and Game Code for 2004-05 that includes a six-day bear hunting season from December 6-11, 2004, which again coincides with the deer hunting season. 36 N.J.R. 2325(a) (May 17, 2004). The Council conducted a public hearing concerning the proposed Code on June 8, 2004, and accepted written comments until July 16, 2004.
On August 25, 2004, the Council adopted the 2004-05 Fish and Game Code, which includes authorization for the bear hunt. The Code was published in the October 4, 2004 issue of the New Jersey Register and became effective that same date. 36 N.J.R. 4513(b) (Oct. 4, 2004). However, sometime after the Council adopted the Code, the Commissioner directed the Division of Fish and Wildlife not to issue applications for bear hunting permits or to process any applications that might be submitted.
On October 9, 2004, the Council extended the deadline for submitting applications for bear hunting permits from September 30 to October 30, 2004.
On October 15, 2004, appellants U.S. Sportsmen's Alliance Foundation, New Jersey State Federation of Sportsmen's Clubs, Gerald McCusker, Anthony Cali, and Edward O'Sullivan filed a notice of appeal challenging the Commissioner's directive to the Division of Fish and Wildlife not to issue applications for bear hunting permits or to process applications. The notice of appeal named the Department of Environmental Protection (DEP), the Commissioner, the Division and the Director of the Division as respondents. At the same time they filed this appeal, appellants also submitted a motion to the Commissioner for ad interim relief requiring issuance of permit applications and processing of applications.
When the Commissioner did not act upon their motion, appellants filed an emergent motion with this court for the same relief. On October 27, 2004, we issued a single judge order requiring the Commissioner, Division and Division Director to "maintain all `Black Bear Permit Application' forms for 2004 that have been filed and [to] accept and maintain all `Black Bear Permit Application' forms filed on or after October 27, 2004," pending a decision by a full panel of this court on appellants' motion for emergent relief.
That same day, the Commissioner issued an order denying appellants' motion for ad interim relief. The Commissioner also issued a document, dated October 26, 2004, which is entitled: "Notice of Prohibition On Issuance of Black Bear Hunt Permits *466 And Closure of Public Lands to Black Bear Hunt During 2004 Game Code."[1] In his order and notice, the Commissioner cited the "reduction in black bear activity" in New Jersey, the cost of overseeing and administering a bear hunt and the Commissioner's desire to pursue other programs for management of the bear population, including public education, enforcement of the statutory ban on feeding bears, see N.J.S.A. 23:2A-14, and development of alternative bear population control methods such as contraception, as the reasons for his policy decision to prohibit DEP staff from issuing bear hunting permits.
On November 1, 2004, we entered an order accelerating the appeal.
The members of the Fish and Game Council are appointed by the Governor with the advice and consent of the Senate. N.J.S.A. 13:1B-24. Three members must be farmers recommended by the State Agricultural Convention; six must be sportsmen recommended by the New Jersey State Federation of Sportsmen's Clubs; one is the chairman of the advisory committee established under The Endangered and Nongame Species Conservation Act, see N.J.S.A. 23:2A-7e; and one must be "a person knowledgeable in land use management and soil conservation practices." N.J.S.A. 13:1B-24.
The Council's primary responsibility is to determine "when and where in the state hunting and fishing shall take place, and which fresh water fish, game birds, game animals, and fur bearing animals may be taken and in what numbers." Humane Soc'y of the U.S. v. N.J. State Fish & Game Council, 70 N.J. 565, 569, 362 A.2d 20, 22 (1976), appeal dismissed, 429 U.S. 1032, 97 S.Ct. 723, 50 L.Ed.2d 744 (1977). This responsibility was conferred upon the Council by article V of chapter 448 of the Laws of 1948, which is codified as N.J.S.A. 13:1B-29 to -41.
The Council's exercise of its powers under article V is not subject to the Commissioner's control. In fact, this article does not even refer to the Commissioner.[2]N.J.S.A. 13:1B-30 provides in pertinent part:
For the purpose of providing an adequate and flexible system of protection, propagation, increase, control and conservation of fresh water fish, game birds, game animals, and fur-bearing animals in this State, and for their use and development for public recreation and food supply, the council is hereby authorized and empowered to determine under what circumstances, when and in what localities, by what means and in what amounts and numbers such fresh water fish, game birds, game animals, and fur-bearing animals, or any of them, may be pursued, taken, killed, or had in possession so as to maintain an adequate and proper supply thereof, and may, after first having determined the need for such action on the basis of scientific investigation and research, adopt and from time to time amend and repeal *467 such appropriate and reasonable regulations concerning the same, or any of them, ... as it deems necessary to preserve, properly utilize or maintain the best relative number of any species or variety thereof, at the times, in the manner and to the extent hereinafter provided. The regulations so established shall be called the State Fish and Game Code.
N.J.S.A. 13:1B-33 requires the Council to conduct a public hearing before adopting such regulations, and N.J.S.A. 13:1B-34 provides in pertinent part:
If after such hearing the council is satisfied that the proposed regulation ... is advisable, it may adopt the same, and if so, it shall state the date on which it takes effect and the council shall cause a true copy of the same to be filed with the Secretary of State.
Thus, by the plain terms of N.J.S.A. 13:1B-34, a regulation adopted by the Council authorizing a hunt becomes effective on the date specified by the Council, without the Commissioner's approval.
In accordance with article V, the Council adopted the 2004-05 Fish and Game Code that includes authorization for a six-day black bear hunt. This regulation was published in the New Jersey Register, 36 N.J.R. 4513(b) (Oct. 4, 2004), and is now part of the New Jersey Administrative Code, N.J.A.C. 7:25-5.6. The regulation provides for a bear hunt in the area west of Route 287 and north of Route 78 from December 6-11, 2004. Ibid. It also provides that no more than 10,000 bear hunting permits may be issued and that no hunter may take more than one bear. Ibid. In addition, the regulation specifies how such hunting may be conducted and which firearms may be used. Ibid. This regulation has the force of law. City of Hackensack v. Rubinstein, 37 N.J. 39, 45, 178 A.2d 625, 628 (1962).
The Commissioner does not contend that the Council's regulations authorizing hunting for bears and other animals are subject to his approval before they become effective. Instead, the Commissioner contends that he retains discretionary authority to determine whether to issue permits for such hunting. In support of this contention, the Commissioner relies primarily upon a section of article IV of chapter 448, N.J.S.A. 13:1B-28, which states:
In addition to its powers and duties otherwise hereinafter provided, the Fish and Game Council shall, subject to the approval of the commissioner, formulate comprehensive policies for the protection and propagation of fish, birds, and game animals and for the propagation and distribution of food fish and for the keeping up of the supply thereof in the waters of the State.
The council shall also:
a. Consult with and advise the commissioner and director of the Division of Fish and Game with respect to the work of such division.
b. Study the activities of the Division of Fish and Game and hold hearings with respect thereto as it may deem necessary or desirable.
c. Report to the Governor and the Legislature annually, and at such other times as it may deem in the public interest, with respect to its findings and conclusions.
The Commissioner contends that the Council's authorization under article V to hunt a particular animal is one component of "comprehensive policies for the protection and propagation" of that animal, which is therefore "subject to [his] approval" under N.J.S.A. 13:1B-28. He also contends that he may decline to give that approval by directing the staff of the Division *468 of Fish and Wildlife not to issue permits for a hunt authorized by the Council.
We reject this argument and conclude that the clear intent of N.J.S.A. 13:1B-28 was to confer additional powers upon the Fish and Game Council beyond its plenary authority under article V to adopt a Fish and Game Code. The introductory clause of N.J.S.A. 13:1B-28 states that "[i]n addition to its powers and duties otherwise hereinafter provided, the Fish and Game Council shall...." (Emphasis added). The only powers and duties of the Council "hereinafter provided" in chapter 448 were the previously described powers and duties under article V to adopt a Fish and Game Code. Therefore, the only reasonable interpretation of N.J.S.A. 13:1B-28 is that the Commissioner's approval authority under this section extends only to the Council's formulation of "comprehensive policies for the protection and propagation of fish, birds, and game animals" and not to the Council's exercise of its authority under article V to adopt the Fish and Game Code.
This conclusion is supported by the legislative history of chapter 448 of the Laws of 1948. This legislation emanated from a 1945 report to the Governor by the Commission on State Administrative Reorganization, which recommended the consolidation into a single state department of several agencies, including the Board of Fish and Game Commissioners. This report contained a recommendation that the commissioner of the new department be given veto power over the actions of all the agencies transferred to the department. New Jersey Commission on State Administrative Reorganization, Report on State Administrative Reorganization (Part IV), Memorandum on a Bill Establishing a State Department of Conservation and Including within it Those Departments, Boards and Commissions Designed to Conserve the State's Natural and Historic Resources, 2-3 (1945). Consistent with this recommendation, one section of the proposed legislation attached to the report stated: "No action shall be taken by [the Fish and Game Council] except upon approval by the commissioner of conservation." Id., proposed bill at 8. However, when the bill that was enacted as chapter 448 was introduced in the 1948 Legislature, it did not include this provision. The sponsor's statement to the bill indicated:
The bill would provide for an adequate and flexible system for the protection, propagation, increase, control and conservation of fresh water fish, game birds, game animals and fur-bearing animals in this State, and for their use and development for public recreation and food supply. To accomplish this purpose, the bill authorizes the Fish and Game Council to adopt, and from time to time amend and repeal, after public hearing, appropriate and reasonable regulations, within the scope provided in the bill, fixing seasons, bag limits, possession limits and territorial limits for, and prescribing the manner and means of pursuing, taking or killing, fish, game birds, game animals and fur-bearing animals[.] ... Regulations so adopted will be known as the State Fish and Game Code.
There is no suggestion in this statement or the bill that accompanied it that the Legislature intended the Commissioner of Conservation, now the Commissioner of Environmental Protection, to have the power to veto Fish and Game Code regulations.
Our conclusion that the Commissioner does not have the power to veto regulations adopted by the Council authorizing hunting is also supported by the Court's opinion in Humane Soc'y of the U.S. v. N.J. Fish & Game Council, supra, upholding *469 the constitutionality of N.J.S.A. 13:1B-24, which is the provision governing the appointment of Council members. The grounds of the attack upon the statutorily prescribed method of appointment was that it violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment by limiting Council membership to farmers recommended by the State Agricultural Convention, sportsmen recommended by the Sportsmen's Federation and commercial fishermen.[3] 70 N.J. at 571-73, 362 A.2d at 23-25. In rejecting this attack, the Court relied in part on the fact that the Council's authority under N.J.S.A. 13:1B-30 "to determine `under what circumstances, when and in what localities, by what means and in what amounts and numbers' fish and game may be taken" is "circumscribed" by the authority of "other agencies," id. at 577, 362 A.2d at 27, in particular the Parks, Forestry and Recreation Council's authority to "recommend programs and policies concerning the... use ... of state parks, forests, and recreation areas[.]" Id. at 576, 362 A.2d at 26. Significantly, the Court did not suggest that the Council's authority is "circumscribed" by any authority on the part of the Commissioner to prohibit a hunt that has been authorized by the Council.
In sum, the Council's authority under article V of chapter 448 to adopt regulations authorizing hunting is not subject to the Commissioner's approval. Moreover, the Commissioner may not subvert the operation of such regulations by directing the staff of the Division of Fish and Wildlife not to issue permits for a hunt authorized by the Council. However, if the Commissioner concludes that the Council has exceeded its authority under article V or acted in an arbitrary and capricious manner in authorizing a hunt, he may bring an action under N.J.S.A. 13:1B-35 in this court challenging the validity of the regulation. See United Hunters Ass'n of N.J., Inc. v. Bontempo, 53 N.J.Super. 181, 186-90, 147 A.2d 83, 85-87 (App.Div.1958). No such action has been brought challenging the part of the 2004-05 Fish and Game Code that authorizes a black bear hunt. Therefore, the Commissioner and Division staff must implement this regulation by processing applications for bear hunting permits.
Accordingly, the Commissioner and other respondents are directed to complete the processing of all applications for bear hunting permits and issue permits or denials of applications for permits accompanied by a statement of reasons no later than December 2, 2004.
NOTES
[1] The part of the Commissioner's notice that directs the staff of the DEP to close all lands owned, controlled or managed by the DEP to the hunting of bears is not challenged in this appeal.
[2] The only other public official referred to in this article is the Governor. N.J.S.A. 13:1B-34 provides in part:

If the Governor shall find that an emergency exists by reason of unusual snow, flood or other natural disaster, the council may amend any regulation establishing open and closed seasons, to extend, shorten or abolish such season, without public hearings, and such amendment may become effective immediately.
This provision is not involved in the present appeal.
[3] As a result of a 1979 amendment to N.J.S.A. 13:1B-24, the requirement that two members of the Council be commercial fishermen was eliminated. The statute now requires that one member shall be the Chairman of the advisory committee established under The Endangered and Nongame Species Conservation Act and another member shall be knowledgeable in land use management and soil conservation practices. L. 1979, c. 199, § 72.