ALBERT F. FABER, appellant, v. HERSCHEL C. LOVELESS,
Governor of the State of Iowa, et al., appellees.

No. 49316.

(Reported in 88 N.W.2d 112)

February 11, 1958.

Kent Emery, of Des Moines, for appellant.

Norman A. Erbe, Attorney General, Raphael R. R. Dvorak, First Assistant Attorney General, Oscar Strauss, Second Assistant Attorney General, Frank D. Bianco and James H. Gritton, Assistant Attorneys General, and Marvin A. Iverson, Special Assistant Attorney General, all of Des Moines, for appellees.

HAYS, J.—Action for declaratory judgment as to the constitutionality of chapter 61, Acts of the Fifty-sixth General Assembly, popularly referred to as the Korean Veterans' Bonus Law. The Act was upheld by the trial court and plaintiff appeals.

Both the title to the Act and the Act itself are rather lengthy and to set forth the same in detail would merely unduly extend this opinion. Briefly, the Act provides for the issuance of bonds by the State of Iowa, subject to the vote of the electors, for the purpose of paying stated amounts to residents of Iowa who served in the armed forces of the United States during the period from June 27, 1950, to July 27, 1953, both inclusive. It also directed that a tax be levied for the payment of the bonds and outlined the mechanics of the administration thereof. At the general election in November 1956, as revealed by the official canvass, the project was approved by a 773,950 affirmative vote as against 279,770 negative. This action was commenced in February 1957.

Appellant's attack upon the Act may be divided into three divisions, (1) Constitutional violations. (2) Statutory violations. (3) Violations of the terms of the Act itself. We consider them in reverse order.

I. Under section 2 of the Act, bonds authorized by the Act are directed to be negotiable coupon bonds. Under an order or directive issued by the Treasurer of State, and reflected in the bonds, said bonds shall be fully negotiable and pass by delivery but shall be subject to registration as to principal only in the name of the owner. If and when registered, said bonds may be transferred only by the registered owner's endorsement thereon. It also provides that said endorsement may be to bearer, in which case full negotiability by delivery only is restored. It is appellant's contention that this optional registration nullifies the negotiability of the bonds. We find no merit therein. The

**596**

general rule appears to be that bonds meeting the requirements of negotiable instruments are negotiable. 11 C. J. S., Bonds, section 63. Section 541.1, Code, 1954, sets forth the prerequisites of a negotiable instrument, and the bond in question, eliminating the provision as to registration, clearly conforms with the statute. We are unable to see wherein the provision for an optional registration in any way violates the directive of section 2 of the Act. So far as the State is concerned, a bond when sold is payable to bearer and it binds the State to pay a stated amount to the legal owner presenting it at maturity. The contingency under which the bond might be registered rests exclusively with the owner thereof and until such right is exercised it retains its original status. Registration thereof, as a practical proposition, would in effect be but a restricted endorsement and have no bearing upon the question whether the bond as originally issued was negotiable. Section 541.47, Code, 1954; Stevens v. Berkshire St. Ry. Co., 247 Mass. 399, 142 N.E. 59; Thomas v. De Moss, 202 N. C. 646, 163 S. E. 759; McClelland v. Norfolk So. R. Co., 110 N. Y. 469, 18 N. E. 237, 1 L. R. A. 299, 6 Am. St. Rep. 397; Dickerman v. Northern Trust Co., 176 U. S. 181, 20 S. Ct. 311, 44 L. Ed. 423.

■ II. Appellant contends that the mechanical steps preliminary to the election held in 1956 required under the terms of the Act and by statute, sections 6.2, 6.3, 6.6, and 6.8, Code, 1954, were not strictly complied with. The mechanics referred to concern the publication of the proposed public measure; filing of affidavits of publication; and certification of the ballot to the county auditors. An examination of the record shows that officials charged in said sections with specific duties meticulously performed those duties. Furthermore, assuming the discrepancies as claimed by appellant, in the absence of a showing of prejudice, which is not found in this record, such discrepancies are inconsequential, in view of the time when this action was commenced with reference to the time of the election. In re Incorporation of Windsor Heights, 232 Iowa 143, 4 N.W.2d 859; State ex rel. Warrington v. Community School Dist. of St. Ansgar, 247 Iowa 1167, 78 N.W.2d 86.

■■ III. Appellant's principal objection goes to the constitutionality of said chapter 61, Acts 56th G.A.

The rules of approach which govern this court when confronted with a constitutional question are well established and concerning which innumerable pages have been written. Suffice to say, they are: The legislature is supreme in the field of legislation in the absence of clear constitutional prohibition with all reasonable presumptions being in favor thereof; neither the wisdom nor the advisability of any legislation presents a judicial question, and the burden of proving a legislative enactment to be violative of the Constitution rests upon those so asserting to the degree of negativing every reasonable basis of support therefor. 16 C. J. S., Constitutional Law, section 99; 11 Am. Jur., Constitutional Law, section 132; Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236; State v. Di Paglia, 247 Iowa 79, 71 N.W.2d 601, 49 A. L. R.2d 1223; Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 77 N.W.2d 15.

■ IV. By chapter 61, Acts 56th G.A., the State of Iowa is authorized to pledge its credit, subject to a vote of the electorate, for the issuance and sale of bonds, the proceeds therefrom to be used in paying stated amounts of money to residents of the State who served in the armed forces of the United States during the period from June 27, 1950, to July 27, 1953, both inclusive. Such legislation is not a new object of legislation in Iowa. On at least two prior occasions, legislation, basically similar, has been adopted, i.e., chapter 332, Acts 39th G.A., and chapter 59, Acts 52d G.A. In each instance the constitutionality thereof was assailed upon substantially the same grounds urged against the instant Act. In each instance this court, after careful consideration, upheld the constitutionality of the enactment. These pronouncements appear in Grout v. Kendall, 195 Iowa 467, 192 N.W. 529, and Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236, respectively.

■ V. Appellant, apparently seeking to differentiate the instant Act from the prior ones, stated they dealt with payments to persons who served in the armed forces of the United States during a war, while in the instant case there was not a war— merely a police action. Nowhere in the instant Act does there appear any mention of war or of a police action. Nowhere in chapter 332, Acts 39th G.A., or in chapter 59, Acts 52d G.A., do we find any mention of war. In each instance, reference is

made to specific dates during which the recipients of the Act served in the armed forces of the United States. In each prior instance, and as we do here, judicial notice is taken of the fact that the periods, therein designated, embraced a period of National Emergency. If in order to place the instant case within the orbit of the Kendall and Beardsley cases, supra, the Korean conflict must be termed a "War", we have no hesitancy in so doing. As bearing somewhat upon the question, see Darnall v. Day, 240 Iowa 665, 37 N.W.2d 277.

VI. A comparison of the titles of chapter 332, Acts 39th G.A., chapter 59, Acts 52d G.A., and chapter 61, Acts 56th G.A. reveals an almost identical similarity except as to time of service and amount of bonds to be issued. The title in each instance provides for a payment, called a "bonus" in chapter 332; called "service compensation" in chapters 59 and 61. In each instance a board to administer the same is created; in each instance the imposition, levy and collection of a direct annual tax sufficient to retire principal and interest on the bonds is provided; in each instance it provides for application of any surplus to the retirement of the indebtedness thus created.

A like comparison of the various chapters, with a few exceptions, reveals a like similarity. As to any surplus that may exist each Act makes different disposition thereof. Chapter 332, section 8, provides for a disability fund of $2,000,000 with the surplus if any above that to be used to retire the bond indebtedness. Chapter 59, section 10, provides for a $3,000,000 disability fund, with all in excess thereof to revert and become a part of the permanent school fund of the State. Chapter 61, section 11, provides that any surplus after the final payment of claims and expenses shall be transferred to the general fund of the State.

VII. As to the provisions for retirement of the bonds, chapters 332 and 59 impose and levy upon all the taxable property within the State, in addition to all taxes, a direct annual tax sufficient to retire said bonds and interest thereon. Chapter 61 imposes and levies upon moneys and credits and other tangible personal property subject to taxation at other than the general property rate a direct tax of one mill upon the dollar, which shall be in addition to all other taxes levied upon such intangible property. It also imposes and levies upon all other

tangible property in addition to all other taxes, a direct annual tax for each of the years the bonds are outstanding, sufficient in amount, together with the one mill tax, to retire bonds and interest.

The mechanics of the levy, assessment and collection are substantially identical.

VIII. Appellant asserts that chapter 61, Acts of the Fifty-sixth General Assembly, violates the following sections of the Constitution of Iowa in the respect noted, i.e.:

1. Section 6, Article I—Unreasonable classification of benefited persons.

2. Section 1, Article III—Unauthorized delegation of legislative powers to the "Service Compensation Board."

3. Section 24, Article III—Withdrawal of State funds not in consequence of a legal appropriation thereof.

4. Section 29, Article III—Act contains provisions repugnant to its title.

5. Section 30, Article III—A special law providing specially for an additional direct tax upon moneys and credits, as well as for an annual ad valorem tax.

6. Section 31, Article III—Payment of claims not provided for by pre-existing law.

7. Section 1, Article VII—Allows use of State's credit in aid of individuals.

8. Section 4, Article VII—Debt created is not one contracted to repel invasion, suppress insurrection, or defend the State in war.

9. Section 5, Article VII—Debt contracted is not for a single object and does not provide for a single direct annual tax sufficient to retire the bonds and interest within twenty years from the time of contract thereof.

10. Section 7, Article VII—Act does not distinctly state the tax but relies upon reference to other laws.

In Grout v. Kendall, supra, 195 Iowa 467, 192 N.W. 529, chapter 332, Acts 39th G.A., basically identical to the instant Act, was assailed as violating the same Articles and sections enumerated in objections 1, 3, 4, 6, 7, 8, 9, and 10, above set forth. In Knorr v. Beardsley, supra, 240 Iowa 828, 38 N.W.2d

236, as to chapter 59, Acts 52d G.A., likewise basically identical to the instant Act, objections similar to items 4, 9 and 10, above set forth, were presented to this court. In both instances, after a full and careful analysis of the provisions of the Act and of the provisions of the Constitution involved, we held the objections to be without merit.

Ordinarily courts will not inquire into Constitutional questions previously decided where the issues presented are similar to those previously presented and determined, 21 C. J. S., Courts, section 215; 14 Am. Jur., Courts, sections 66 and 72; John Hancock Mut. L. Ins. Co. v. Eggland, 225 Iowa 1073, 283 N.W. 444; Winter v. Shafter, 317 Mich. 259, 26 N.W.2d 893; State v. Clark, 158 Neb. 570, 64 N.W.2d 112. See also Stuart v. Pilgrim, 247 Iowa 709, 74 N.W.2d 212. Except as to the items or objections hereinafter mentioned, we will follow the general rule and abide by the pronouncements in the Kendall and Beardsley cases, supra.

IX. While perhaps items 4 and 9, supra, have been sufficiently discussed in Knorr v. Beardsley, supra, there is a difference in the disposition of any surplus as stated therein and as provided for in the instant Act. In chapter 59, Acts 52d G.A., the surplus went into the permanent school fund of the State. In the instant Act, it goes into the State's general fund. If materially different, as claimed by appellant, we adopt the reasoning announced in the Beardsley case, 240 Iowa 828, 856, 38 N.W.2d 236, 251, to the effect that "Any part of the proceeds of the sale of the bonds which may go into the permanent school fund will do so not as an object or purpose of the debt authorized, but merely as a by-product thereof", to be equally applicable when placed in the State's general fund. We do not say that a situation could not arise where, under the guise of an apparent legitimate public purpose, the provisions of section 5, Article VII, of the Constitution of Iowa might be used to indirectly supplement the general fund. Such would be a horse of another color and is not the situation here.

X. As previously stated, the instant Act differs from the previous one in respect to the tax imposed. In imposing the one mill levy upon moneys and credits and other intangible property with the balance, necessary to retire the debt, to be by a tax im-

posed on tangible property, appellant contends that sections 5 and 7, Article VII, of the Constitution of Iowa are violated in that such is not a direct tax.

Section 5, Article VII, Constitution of Iowa, provides "* * * such law shall impose and provide for the collection of a direct annual tax, * * *." While the name given a tax by the legislature is not determinative, such legislative designation is an important factor in determining the character of the tax, 84 C. J. S., Taxation, section 3(b). Section 11 of the Act definitely states the tax as to both classes of property is a direct tax.

A direct tax is one which is imposed directly on property according to its value and is frequently called a property or ad valorem tax. It is taxation based on assessment of taxes against property at a certain rate upon its actual value and is invariably based upon ownership. Powell v. Gleason, 50 Ariz. 542, 74 P.2d 47, 114 A. L. R. 838; Commonwealth ex rel. Dept. of Justice v. A. Overholt & Co., 331 Pa. 182, 200 A. 849; 51 Am. Jur., Taxation, section 25; 84 C. J. S., Taxation, section 3. Section 428.1, Code, 1954, requires a listing of intangible property, moneys and credits etc. with the assessor and section 429.2 requires such to be taxed at five mills on the dollar of actual valuation.

The one mill levy on intangible property (section 11, chapter 61, Acts 56th G.A.) comes within all definitions of a direct tax and we hold it to be such.

Appellant places stress upon the case of State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 223 N.W. 737, referred to as the "Road Bond Act." That enactment, chapter 2, Acts 42d G.A., Special Session, proposed a state bond issue of $100,000,000 to be used in primary road construction. It was approved by the electorate and on its constitutionality being assailed it was upheld in the trial court and on appeal the judgment was reversed. While it was held bad in several respects, the question as to a direct tax being imposed was considered. The difference in the two acts as to the tax imposed is so clear that little discussion is warranted. Briefly, the Road Bond Act imposed a direct annual tax upon all taxable property and required the same to be levied *provided* money in the Primary

Road Fund, created by prior legislation, which the Act appropriated for the payment of the bonds, was insufficient. This provision was held bad, the court saying, 207 Iowa 923, 933, 223 N.W. 737, 741: "The net result * * * is that it pledges the license and gasoline taxes to a primary liability for the payment of the debt. This is a purported substitution of these indirect taxes for a direct tax. * * * the legislature had power neither to pledge nor to substitute an indirect tax for a direct one."

Under section 11 of the instant Act we find a direct levy of one mill on the dollar of intangible property which is directly allocated to pay the debt, with a direct tax imposed upon tangible property, the amount thereof to be the difference between the amount received from the direct tax upon intangibles and the amount necessary to pay the bonded indebtedness. The "Road Bond" case is clearly not in point.

We find nothing in the various objections urged which in any manner violate the several constitutional sections set forth in appellant's brief and argument. The judgment of the trial court should be and is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.