**FIRST NATIONAL BANK OF OTTUMWA, Appellant,**

v.

**G. D. BAIR, Director, Iowa Department of Revenue, Appellee.**

No. 2–58136.

Supreme Court of Iowa.

April 20, 1977.

Rehearing Denied May 19, 1977.

John N. Moreland, Ottumwa, for appellant.

Richard C. Turner, Atty. Gen., George W. Murray, Special Asst. Atty. Gen., and Harry M. Griger, Asst. Atty. Gen., for appellee.

Heard by MOORE, C. J., and REES, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

Plaintiff bank appealed to district court a franchise tax deficiency assessment confirmed by defendant director. The bank now appeals from a district court ruling upholding the assessment. We reverse and remand.

Most of the relevant facts are stipulated. The bank is a nationally chartered institution with its principal place of business at Ottumwa, Iowa. For all pertinent years it had an installment loan department. Before 1969 the bank recorded as income the entire amount of the interest on discounted notes on the date the loan was made.

The Comptroller of the Currency promulgated a regulation requiring national banks to follow an accrual method of reporting the interest as an increment of the loan payments when received.

To avoid paying income tax on $514,028.28 of interest a second time, the bank requested the Commissioner of Internal Revenue to approve a change of accounting practice. The Internal Revenue Service proposed a collateral agreement under Revenue Procedure 64–16. Pursuant to this procedure and agreement, the bank was permitted to change its practice of reporting the interest in the year the loan was made to the practice of reporting such interest as income in the year in which payments on the loans were received. Further, the bank was authorized to deduct from its taxable income, each year for ten years, 10 percent ($51,402.82) of the interest previously reported as income, commencing with the 1969 taxable year.

In May of 1970, the Iowa franchise tax law was enacted and the moneys and credits tax on bank stock was repealed. Ch. 1204, 63rd G.A. (1970); see § 422.60 et seq., The Code, 1975.

In preparing its Iowa franchise tax returns for 1970 and 1971, the bank used its

net income as computed for federal revenue tax purposes. Of course, this income had been reduced in the amount of interest deduction created by the prior Internal Revenue Service agreement.

The Iowa Department of Revenue disallowed this deduction and assessed against the bank additional taxes for 1970 and 1971 in the amounts of $3,819.39 and $4,112.23, respectively. The bank's appeal to the director as authorized by § 422.28, The Code, resulted in a ruling confirming the assessment. February 26, 1973, the bank filed timely notice of appeal to district court. February 7, 1975, following hearing, trial court filed findings of fact and conclusions of law upholding the assessment. Decree in conformance therewith was filed February 14, 1975.

■ I. The sole issue in this case is whether a deduction allowed on a federal tax return should also be reflected in the computation of Iowa franchise tax.

The Iowa franchise tax is imposed on financial institutions "according to and measured by net income." § 422.60, The Code. " 'Net income' means the net income of the financial institution computed in accordance with section 422.35 * * *." § 422.61(4), The Code.

Section 422.35 relevantly provides:

"The term 'net income' means the taxable income less the net operating loss deduction, both *as properly computed for federal income tax purposes* under the Internal Revenue Code of 1954, with the following adjustments:
* * * " (emphasis supplied)

This statute identifies several adjustments which may affect the net income figure, none of which is pertinent here.

We examine these statutory provisions in light of several of our rules of statutory construction.

■ Where the language is clear and plain, there is no room for construction. *Iowa Nat. Indus. Loan Co. v. Iowa State Dep't of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974); *In re Johnson's Estate,* 213 N.W.2d 536, 539 (Iowa 1973). We must look at what the legislature said, rather than what it should or might have said. Rule 344(f)(13), Rules of Civil Procedure; *Kelly v. Brewer,* 239 N.W.2d 109, 113–114 (Iowa 1976).

■ All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion. *Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc.,* 178 N.W.2d 343, 350 (Iowa 1970); *Webster Realty Company v. City of Fort Dodge,* 174 N.W.2d 413, 418 (Iowa 1970).

■ We give weight to the administrative interpretation of statutes, particularly when they are of long standing. *State v. Garland,* 250 Iowa 428, 434–435, 94 N.W.2d 122, 126 (1959); see *Iowa Nat. Indus. Loan Co. v. Iowa State Dep't of Revenue, supra,* 224 N.W.2d at 440.

■ In construing tax statutes doubt should be resolved in favor of the taxpayer. *Estate of Dieleman v. Department of Revenue,* 222 N.W.2d 459, 461 (Iowa 1974); *Northern Natural Gas Co. v. Forst,* 205 N.W.2d 692, 697 (Iowa 1973).

■ Finally, we cannot under the guise of judicial construction add words of qualification to the statute in question or change its terms. *Kelly v. Brewer, supra,* 239 N.W.2d at 114; *State v. Prybil,* 211 N.W.2d 308, 311 (Iowa 1973).

Stripped to language material here, §§ 422.60, 422.61(4) and 422.35 simply provide the "net income" upon which the bank's franchise tax is to be computed is the "taxable income * * * *as properly computed for federal income tax purposes.*" These words plainly dictate that the starting point for computation of net income for Iowa franchise tax purposes is the taxable income figure reported on the federal income tax return.

The franchise tax return form adopted by the Department of Revenue graphically illustrates the simple computation called for by these statutes:

"1. Taxable income per federal return (after dividend credit and net operating loss deduction) ...................... $_____

"2. Interest and dividends exempt from federal tax (exclude interest and dividends from securities of the State of Iowa and its political subdivisions) ... _____

"3. Total (add lines 1 and 2) .......... _____

"4. Less: 50% of federal income tax .... _____

"5. IOWA NET INCOME SUBJECT TO FRANCHISE TAX. _____

" * * * "

Obviously, this quick and efficient system for reporting income for franchise tax purposes would be jeopardized if the director's arguments were adopted.

■ II. The appellee director steadfastly ignores the fact the legislature has defined what franchise tax "net income" is. Impliedly conceding the literal language of the statutes defeats this assessment, he nonetheless argues that following the code provisions as written would violate our rule that "[i]n considering legislative enactments we should avoid strained, impractical or absurd results." *Iowa Nat. Indus. Loan Co. v. Iowa State Dep't of Revenue,* supra, 224 N.W.2d at 440.

We believe the director is incorrect in contending a literal interpretation of these statutes would result in absurd, impractical or unreasonable consequences. The result is practical. The taxpayer is permitted to merely lift the figures off the federal return and transfer them to the Iowa franchise tax return. The Department of Revenue receives the benefit of the regulations and interpretations of the federal agency.

But the director argues the result of the bank's literal interpretation is absurd because (1) it is affected by events which occurred prior to the first taxable year in which the franchise tax was in existence, thus making the statute retroactive, (2) it ignores the concept of taxable year as used in § 422.61(2), The Code, and (3) it allows a taxpayer to escape tax by using an I.R.S. agreement which was intended only to avoid double tax.

We parenthetically observe none of these arguments, if true, would make the bank's interpretation absurd. It can be logically reasoned the legislature made a conscious choice, balancing the ease and efficiency of merely lifting figures off the federal return against the evils the director envisions.

We also note the director's position here is 180 degrees from the department's position in *In re Estate of Waddington,* 201 N.W.2d 77 (Iowa 1972), where we adopted its position that certain statutes generating additional inheritance tax must be literally construed and applied, even though the result was inequitable. We there said, 201 N.W.2d at 80, "[T]he remedy lies in enlightened legislative tax law changes, not in judicial interpretation of statutes which permit only one construction."

Turning to the director's first complaint, it is true the statute will in effect be partially retroactive in result. It will cause taxation of gains carried forward and nontaxation of losses and deductions carried forward. But it would be difficult to provide for a clean break-off point. The director's interpretation could require financial institutions to carry out complex procedures in computing the Iowa tax, involving the time and expense required to complete federal returns. It is neither impractical nor absurd for the general assembly to avoid these consequences.

Second, the director urges the bank's interpretation ignores the concept of "taxable year" set out in § 422.61(2), The Code. He argues that because the prior reporting of interest income did not occur in a franchise tax "taxable year," such reporting should have no Iowa franchise tax effect. The director insists "a proper interpretation of the Iowa franchise tax law requires the disregarding herein of the provisions of Revenue Ruling 64–16."

Section 422.63, The Code, imposes the franchise tax in graduated increments on "the net income received or accrued during the taxable year." Section 422.61(2) merely defines "taxable year" to mean "the calendar year or the fiscal year ending during a calendar year, for which the tax is payable." There is nothing in § 422.61(2) which is inherently inconsistent with the bank's interpretation of these enactments,

or which would require "net income" to be defined differently than § 422.35 provides.

Of course events prior to 1970 were bound to be reflected in the federal return taxable income, and consequently, the franchise tax net income. Prior installment sales and depreciable items purchased, for example, might well have had a direct bearing on the computation of federal return taxable income in 1970 and 1971, under applicable federal statutes, rules and regulations. There is nothing in these statutes which persuades us the legislature intended adjustments for these income-affecting transactions occurring prior to the adopting of the franchise tax legislation.

On this point the director claims support in *Pacific Wholesalers v. Mangerich,* 147 F.Supp. 867 (D.Guam 1957), which involved payment of federal income tax. There an operating loss for 1950 was attempted to be carried over to 1951, the first year income tax was imposed in Guam. The federal district court disallowed the deduction because under federal law such losses were deductible only if incurred in the "taxable year." See Internal Revenue Code § 165; 5 Merten's Law of Federal Income Taxation § 28.02, at 5 (1975). As there was no income tax in Guam in 1950, the court held the loss was not incurred in a "taxable year" and could not be deducted.

■ *Pacific Wholesalers* is distinguishable from the case *sub judice.* No similar restriction on deductions is contained in the Iowa law. The legislature in § 422.61(4) demonstrated it knew how to create exceptions to the § 422.35 definition of net income. Yet it did not expressly disallow loss carry-overs or deductions from prior years. Significantly, the reference to "taxable year" in these Iowa statutes relates to income as computed on the federal income tax return for the same period, not to the availability of deductions or the year of deductions.

Finally, the director argues the I.R.S. agreement, which was intended to prevent double taxation, should not affect the bank's income for franchise tax purposes because there is no possibility this tax, first applied in 1970, was ever imposed on income in prior years.

Of course, this argument might well have been addressed to the legislature as a policy consideration, but is not persuasive on the issue whether the literal interpretation of the statutes is absurd or unreasonable.

■ Moreover, it is not accurate to state disallowance of the deduction from 1970 and 1971 franchise tax income would not result in double taxation. The interest income reported in years prior to 1970 which the director now seeks to subject to tax was reflected in the assets of the bank in those years. § 430.1, The Code, 1966. Accordingly, it enhanced the value of the bank stocks upon which the shareholders paid moneys and credits tax. §§ 429.1, 429.2, 430.2 *et seq.,* The Code, 1966.

A tax on this interest income again (this time under the Iowa franchise tax) would result in double taxation, albeit indirectly. This is contrary to congressional intent expressed in 12 U.S.C. § 548 (since repealed) which stated:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, and (3) tax such associations on their net income, or (4) according to or measured by their net income * * *.

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others * *."

It is apparent from this federal legislation that Congress considered taxation of shares of stock and taxation based on income to be double taxation. It only permitted a state to tax a national bank using one of the listed alternatives. See *First Agricultural Nat'l Bank v. Tax Commission,* 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968).

We hold the result obtained by application of the statutory construction contended for by the bank would not be impractical, absurd or unreasonable.

III. The conclusion we reach is supported by the holding in *In re Franchise Tax Liability of Iowa-Des Moines Nat'l Bank for 1970,* Opinion 49, Iowa State Board of Tax Review (January 29, 1974). The director's brief asserts since this decision "is a public record, [it] could have been cited to the trial court by taxpayer's counsel." The latter conceded in oral argument he did not know of the decision when this matter was under submission below. The failure of the director's counsel to give trial court the benefit of the Board's decision may not have been a violation of EC 7–23, Iowa Code of Professional Responsibility for Lawyers, there being a question whether it is a "legal authority." But no one disputes our right to consider it. See §§ 421.1; 17A.3(1)(d) and (2), The Code.

In *Iowa-Des Moines National Bank,* supra, the department denied, for 1970 franchise tax purposes, a net operating loss carry-over of a subsidiary which was liquidated into the bank in 1969. This deduction had been allowed on the bank's 1970 federal income tax return. The Iowa-Des Moines National Bank appealed to the State Board of Tax Review. See § 421.1, The Code.

The Board, in a decision which extends over several pages of the appendix, rejected the same arguments the director advances here, stating, "The Board feels that the Department of Revenue should not be permitted to interpret a statute on the basis of what it feels is reasonable, where the statute so clearly sets forth the manner in which 'net income' for franchise tax purposes is determined." The Board observed the director failed "to appreciate the distinction between a franchise tax and a normal income tax."

■ Although the Board's decision is not binding on this court, its reasoning is persuasive. We give weight to the administrative interpretation of statutes. *State v. Garland,* supra, 250 Iowa at 434–435, 94 N.W.2d at 126; See *Iowa Nat. Indus. Loan*

*Co. v. Iowa State Dep't of Revenue,* supra, 224 N.W.2d at 440. In this connection the director's brief argues the director is not bound in this case by the above decision of the State Board of Tax Review. While we need not resolve that issue, we deem it significant the Iowa Code gives the Board review power over the director's decisions, orders and directions, and it is granted the general power to "[p]erform such duties prescribed by law as it may find necessary for the improvement of the state system of taxation in carrying out the purposes and objectives of the tax laws." § 421.1, The Code.

We reverse and remand with directions to enter a ruling in conformance herewith.

REVERSED AND REMANDED WITH DIRECTIONS.