Raymond G. GAMEL and Roy Berger, Appellees,

v.

VETERANS MEMORIAL AUDITORIUM COMMISSION, Ray C. Stiles, Commissioner, Harry J. Bradley, Jr., Commissioner, Russell H. Laird, Commissioner, Everett S. Newcomb, Commissioner and Peter Watrous, Commissioner, Appellants.

No. 2–61231.

Supreme Court of Iowa.

Dec. 20, 1978.

James P. Irish, Altoona, for appellants.

Gordon E. Allen, Des Moines, for appellees.

ALLBEE, Justice.

This case presents the second assault on the constitutionality of § 37.10, The Code, which provides for the qualifications and selection of commissioners for military veterans memorial buildings and monuments. The results of the first are recorded in *Vietnam Veterans Against the War v. Veterans Mem. Aud. Comm'n,* 211 N.W.2d 333 (Iowa 1973). In that case six members of this court decided that the plaintiffs lacked standing. The dissent found standing, reached the merits and found part of § 37.10 unconstitutional.

Chapter 37 of the Code deals with the erection and maintenance of buildings and monuments memorializing veterans of the armed services. It provides, in § 37.9, that when a building or monument is to be built, a commission shall be appointed to have charge of the construction of the edifice and to manage and control it when completed. Maintenance is accomplished with public funds. § 37.8. Those funds are disbursed only on the written order of the commissioners. § 37.16. The section under attack, § 37.10, is the provision by which

commissioners are selected and appointed.[1] In its first paragraph, it requires that commissioners be honorably discharged veterans. Its second paragraph establishes a procedure whereby eight named veterans organizations select five commissioners. The names of those selected are forwarded to, in this case, the city council of Des Moines which "shall by resolution appoint them as such commissioners." No veteran or member of the general public who is not a member of one of the eight named organizations has any voice in the selection of commissioners.

■ The defendants in this action are the commission and individual commissioners charged with the responsibility of managing and maintaining the Veterans Memorial Auditorium in Des Moines. Plaintiffs are both residents of Des Moines and honorably discharged veterans who are not members of any of the organizations named in § 37.10. They therefore have standing to challenge the selection procedure under the test of *Vietnam Veterans,* 211 N.W.2d at 335.

The auditorium is used for diverse purposes, including high school basketball and wrestling, college basketball, symphony and rock concerts, graduation exercises, circuses, professional wrestling and a variety of shows and conventions. Full time employees receive consideration as employees of the City of Des Moines and benefits of city employment including insurance and pensions.

The petition alleged that the selection process provided by § 37.10 was constitutionally deficient in four respects. It claimed plaintiffs were denied equal protection of the law guaranteed by the four-

teenth amendment to the United States Constitution, both as veterans and as residents of Des Moines generally. It alleged infringement of plaintiffs' first amendment freedoms of speech and association. It complained that § 37.10 was an unlawful delegation of legislative power, in violation of article III, § 1 of the Iowa Constitution. And it challenged the requirement that commissioners must be veterans, an equal protection argument claiming discrimination against non-veteran citizens of Des Moines. The two allegations that equal protection has been denied to residents of Des Moines generally are new and broader claims which were not made in *Vietnam Veterans.*

Trial court decided that the plaintiffs' delegation and equal protection claims were meritorious, relying upon the dissent in *Vietnam Veterans,* 211 N.W.2d at 338–41. It therefore declared the commissioners' positions vacant and adopted the remedy proposed by the *Vietnam Veterans* dissent: the city council of Des Moines would appoint commissioners pursuant to § 37.14. 211 N.W.2d at 342. That portion of the decree was directed at the second paragraph of § 37.10, the selection process. Trial court, however, went beyond the *Vietnam Veterans* dissent to nullify the requirement of the first paragraph and provide that the commissioners need not be veterans. Defendant commissioners filed a timely notice of appeal. Because the case was heard in equity, our review is de novo. We consider only the state law question because it is dispositive of the appeal.

■ I. *The selection procedure.* The delegation of state sovereign power is a

1. **37.10 Qualifications—method of appointing.** Each such commissioner shall be an honorably discharged soldier, sailor, or marine of the United States, selected in the following manner:

   Within sixty days after the election, each post of the Grand Army of the Republic, Spanish-American War Veterans, Veterans of World War I, and the American Legion, Disabled American Veterans of the World War, Veterans of Foreign Wars of the United States, Marine Corps League and American Veterans of World War II (AMVETS) in the county or city, as the case may be, shall appoint three delegates who shall, within ninety days after such election, meet in convention in the county or city, as the case may be, and by ballot select five commissioners, whose names shall be forthwith furnished to the board of supervisors, or the city council, as the case may be, whereupon said board of supervisors or city council shall by resolution appoint them as such commissioners.

matter of state constitutional law. *Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758, 772 (Iowa 1971). The Federal Constitution is not implicated in any way. *Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036, 1039 (D.N.J.1975). The provision in which plaintiffs place reliance, article III, § 1, provides:

> **General assembly.** Section 1. The Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives . . . .[2]

■ State courts have expressed two views on the propriety of delegation of state power to private persons. *Vietnam Veterans,* 211 N.W.2d at 338–9 (McCormick, J., dissenting). The first is exemplified by *Ashmore v. Greater Greenville Sewer Dist.,* 211 S.C. 77, 44 S.E.2d 88 (1947). That case held a delegation unconstitutional because there was a "lack of substantial and rational relation between the appointive or elective power and the function of government which the appointees or electees are to perform." 211 S.C. at 94, 44 S.E.2d at 96. Application of this standard in later South Carolina cases resulted in upholding two statutes in the face of constitutional attack. In *Floyd v. Thornton,* 220 S.C. 414, 421–2, 68 S.E.2d 334 (1951) the statute provided that members of the board of bank control would be appointed on recommendation of a bank association, a savings and loan association and representatives of cash depositories. The delegation was upheld because the organizations were "especially qualified" to make such selections. 220 S.C. at 421–2, 68 S.E.2d at 337–8. And in *State v. Taylor,* 223 S.C. 526, 77 S.E.2d 195 (1953) (per curiam) a technical livestock committee, which was empowered to promulgate

rules enforceable by criminal penalties, was appointed by an agricultural college board of trustees and officers of the Livestock Dealers Association. Due to the special qualifications of these groups, 223 S.C. at 531, 77 S.E.2d at 197–8, the delegation was upheld.

A similar view finds expression in *Humane Society v. New Jersey State Fish and Game Council,* 70 N.J. 565, 362 A.2d 20 (1976). The facts were akin to those here. Various private organizations, such as hunting clubs and an association of commercial fishermen, nominated members of the Fish and Game Council, who were then appointed by the governor. Plaintiffs were environmentalists who alleged that their interests were at variance with the appointing groups named in the statute. The statute was upheld. In examining the delegation problem, the court said that delegation to private persons is permissible if sufficient safeguards exist. "The test is whether the particular delegation is reasonable under the circumstances considering the purpose and aim of the statute." 70 N.J. at 579, 362 A.2d at 28. Thus, the idea of safeguards enters the delegation to private parties controversy, just as it has become important in the area of delegation to administrative agencies. *See Board of Sup'rs of Linn County v. Dept. of Revenue,* 263 N.W.2d 227, 238 (Iowa 1978); *Town of Arlington v. Board of Conciliation & Arbit.,* 370 Mass. 769, 352 N.E.2d 914, 920 (1976) (dealing with arbitration award to firefighters and policemen; "delegations to private persons are not forbidden so long as proper safeguards are provided"); *Southern Pacific Transp. Co. v. Public Utilities Comm'n,* 18 Cal.3d 308, 313, 134 Cal.Rptr. 189, 192, 556 P.2d 289, 292 (1976) ("The Legislature may

**2.** Cases cited in the discussion which follows rely on several different varieties of state constitutional provisions to reach the delegation question. *Ashmore v. Greater Greenville Sewer Dist.,* 211 S.C. 77, 44 S.E.2d 88 (1947) relied upon equal protection and due process clauses. *Hetherington v. McHale,* 458 Pa. 479, 329 A.2d 250 (1974) is founded upon Article IV, § 8 of the Pennsylvania Constitution, giving appointive power to the governor. *Olin Mathieson Chem. Corp. v. White Cross Stores,* 414 Pa. 95,

199 A.2d 266 (1964) and *Remington Arms Co. v. G. E. M. of St. Louis, Inc.,* 257 Minn. 562, 102 N.W.2d 528 (1960) both rely upon provisions vesting the legislative power in the legislature. *Bulova Watch Co. v. Robinson Wholesale Co.,* 252 Iowa 740, 108 N.W.2d 365 (1961) contains no reference to any specific constitutional provision, although we may infer a reliance on Article III, § 1 in light of *Bulova's* primary reliance on *Remington Arms.*

not confer upon private persons unrestricted authority to make administrative determinations."). Of course, none of these last three are appointment cases, but we give consideration to the general standard.

The second view, and that supported by the *Vietnam Veterans* dissent, is that private individuals cannot be empowered to select boards to spend public funds, no matter how well qualified they may be. For this the dissent cites *Opinion of Justices*, 337 Mass. 777, 150 N.E.2d 693 (1958); *State v. Schorr*, 6 Terry (45 Del.) 18, 65 A.2d 810 (1948), and *Tucker v. State*, 218 Ind. 614, 35 N.E.2d 270 (1941). The discussions of these cases in the *Vietnam Veterans* dissent, 211 N.W.2d at 338–9, are entirely adequate and do not bear repeating here. It is sufficient to note that they support the strict view which the *Vietnam Veterans* dissent would adopt.

At least three other states apply this strict rule. In *Morrow v. Wipf*, 22 S.D. 146, 158–9, 115 N.W. 1121, 1126–7 (1908) the statute being considered provided that, in the absence of a sufficient contest over the selection of delegates, the county central committee of a political party could choose delegates to the state convention without a county convention. This was found to be an impermissible delegation of legislative authority. The court was concerned that an unscrupulous committee would never find a contest sufficient to require a convention.

Similarly, the law considered in *People ex rel. Rudman v. Rini*, 64 Ill.2d 321, 1 Ill.Dec. 4, 356 N.E.2d 4 (1976) provided that, upon the death of an office holder, the county central committee of the decedent's political party should appoint a qualified member of the same party to fill out the term. The statute was held unconstitutional because the power to appoint officers is a sovereign power of the state and cannot be delegated to private parties. 64 Ill.2d at 328, 1 Ill. Dec. at 7, 356 N.E.2d at 7.

The Pennsylvania Supreme Court supported this view in *Hetherington v. McHale*, 458 Pa. 479, 329 A.2d 250 (1974). There, some (but not all) members of a committee which allocated funds for agricultural research projects were selected by three agriculture-oriented organizations. This observation stands out in the plurality opinion: "[a] fundamental precept of the democratic form of government imbedded in our Constitution is that the people are to be governed only by their elected representatives." 458 Pa. at 484, 329 A.2d at 253. Noting that the private groups given the power of selection were responsive only to the interests of their membership, the court struck down the selection scheme.

Of special interest are two of the authorities upon which *Hetherington* relied. These are *Olin Mathieson Chem. Corp. v. White Cross Stores, Inc.*, 414 Pa. 95, 199 A.2d 266 (1964) and *Corning Glass Works v. Ann & Hope, Inc. of Danvers*, 363 Mass. 409, 294 N.E.2d 354 (1973). *Olin Mathieson* invalidated the nonsigners provision of the Pennsylvania Fair Trade Act and *Corning Glass* stands for the same proposition in Massachusetts. *Hetherington's* reliance upon two cases which found fair trade act nonsigner provisions to be unconstitutional delegations is significant because Iowa also has such a decision in *Bulova Watch Co. v. Robinson Wholesale Co.*, 252 Iowa 740, 108 N.W.2d 365 (1961). *But see Hetherington*, 458 Pa. at 493, n. 2, 329 A.2d at 257 (Jones, C. J., dissenting) (contending *Olin Mathieson* is inapposite). Thus, *Hetherington* is at least in part based on a delegation background similar to Iowa's.

We now adopt the more strict rule exemplified by *Hetherington*, at least insofar as the appointment by private individuals of persons empowered to spend public funds is concerned. Whether delegation of other powers might survive scrutiny if proper safeguards or special qualifications are present is a question which we reserve. It is sufficient that we here decide that there are special interests involved which prohibit giving private groups control of the appointment of public officials with the power to spend public funds. Those interests require a strict rule against any delegation of sovereign power.

The scope of the remedy to which plaintiffs are entitled is dictated by what we have said thus far. To hold that the appointment of the commissioners should be entrusted to all veterans, without regard to membership in the eight named organizations, would still result in delegation of the power of appointment to a private group. The remedy, therefore, must be either the election of the commissioners by all qualified electors in Des Moines, or the appointment of the commissioners by an appropriate public officer or body. Because the scope of the remedy required by the contravention of the state constitution is fully as broad as that potentially required by any of the federal constitutional grounds presented, we need not give consideration to any of those federal questions.

■ II. *The qualifications for commissioners.* We must also consider the propriety of trial court's decision that the first paragraph of § 37.10 was unconstitutional. This paragraph requires that the commissioners be honorably discharged soldiers, sailors or marines of the United States.

Plaintiffs pleaded their attack on this requirement in the fourth paragraph of division IV of their petition:

4. That said statute violates Plaintiffs' rights to the equal protection of the laws granted by the Fourteenth Amendment to the United States Constitution by arbitrarily and without valid legislative purpose, limiting the classification of persons who may serve as commissioners to honorably discharged United States Soldiers, Sailors and Marines, and thus excluding Plaintiffs as potential commissioners.

The concern set forth in this allegation may have been based on a belief that commissioners must also be members of one of the veterans organizations named in the statute. But the language of § 37.10 is clear and leaves no room for such a construction. *See First Nat'l Bank of Ottumwa v. Bair,* 252 N.W.2d 723, 725 (Iowa 1977). The only requirement which must be met in order to qualify as a commissioner is that the individual be an honorably discharged veteran. Because these plaintiffs are honorably discharged veterans, they suffer no disability by this requirement.

Instead, plaintiffs are attempting to raise the rights of third persons: non-veteran residents of Des Moines. This they may not do. *Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 567 (Iowa 1976). There are exceptions to the rule against raising the rights of third parties, *see Iowa Movers & Warehousemen's Ass'n v. Briggs,* 237 N.W.2d 759, 772–3 (Iowa 1976), but none apply here. Because plaintiffs do not have standing to complain about the qualification, no relief can be granted on that claim.

III. *The remedy.* We have said that the remedy required to satisfy the constitution of this state is fully as broad as any potentially required by the Federal Constitution. It is, therefore, appropriate to adopt the remedy advocated by the *Vietnam Veterans* dissent. 211 N.W.2d at 341–2. On the basis of the reasoning and authorities cited there, we reach the following conclusions.

■ Because the two paragraphs of § 37.10 are severable, the requirement that each commissioner shall be an honorably discharged soldier, sailor or marine of the United States remains intact.

■ The commission selected under § 37.-10 is an administrative rather than legislative body. There is no constitutional requirement that its members be elected rather than appointed. Therefore, this case does not involve a constitutional right requiring or permitting affirmative judicial implementation.

We need not substitute an alternate selection scheme. The legislature is free to provide that the positions should be filled by appointment by an appropriate public officer or body. If it prefers election of commissioners, the procedure is a matter for legislative determination.

Because the selection procedure of § 37.10 is severable from the remaining provisions of the statute, § 4.12, The Code, §§ 37.13 and 37.14 remain fully operative. The city council may, therefore, appoint commissioners pursuant to § 37.14.

The commission positions held by defendants are declared vacant 30 days from the issuance of procedendo in this case. The city council of Des Moines is authorized to appoint successor commissioners under § 37.14. Those commissioners shall meet the qualifications specified by the first paragraph of § 37.10.

Vacated in part and affirmed in part.

All Justices concur except HARRIS and LeGRAND, JJ., who dissent.

HARRIS, Justice (dissenting).

For nearly a century Iowa Law has provided a scheme for the selection by veterans of the persons who are to superintend veterans memorials. In providing for selection of the commissioners by city hall the majority supplants the legislative plan with one which might seem better. I believe either plan, the legislature's or the majority's, is constitutional. It is not for us to decide which plan is preferable. I dissent because I believe the legislative scheme can withstand the constitutional challenge. I would reverse the trial court.

The legislative plan was conceived [Acts of the 21st G.A., 1886, ch. 62, § 3] against the backdrop of a centuries-old debate. That debate was perhaps best summarized by a North Dakota trial judge, quoted in *Gehrke v. Board of Com'rs.*, 58 N.D. 407, 415, 226 N.W. 536, 540 (1929):

"There is not general agreement as to what form a memorial or recognition should take. Many believe it should be characterized by a shaft, obelisk, or tablet, and constructed of granite or other materials that do not readily deteriorate, and that the same should contain proper inscriptions commemorative of persons and deeds. There is no doubt but what such construction would be appropriate. On the other hand, many believe that a more suitable recognition is evidenced by a structure or edifice that can be used and enjoyed by the living.

"It is not necessary to enter into an academic discussion of the merits of these different views. Suffice it to be said that, from the earliest periods of time of civilized man, memorials have frequently taken one or the other form. The instances are numerous throughout the centuries where men have erected, for the purpose of commemorating some distinguished personage, or the occurrence of some great event, memorials consisting of halls, art galleries, libraries, institutions of learning, cathedrals, and other edifices and structures designed for human habitation, enjoyment, and development."

In allowing a functional sort of memorial, our 1886 legislature was faced with the task of striking a practical balance between the named purpose of the memorials and the public use to which they would be put. The very concept of a veterans memorial is a commingling of direct tribute and the public funds used for the purpose. The aim is to pay tribute and to use it at the same time.

A delicate question then arose in terms both of enacting the legislation and in later gaining local public approval for specific projects. Are we really providing for *veterans* memorials? Or are we fishing the shifting tides of patriotism to procure public projects that would otherwise fail? Veterans are not known for their willingness to be exploited. Hence the legislature arrived at the scheme that has remained in effect until now. Veterans themselves shall superintend the memorial. More than that, veterans shall name the veterans who do.

This suit stems from the difficulty in setting up the machinery for veterans to make their selections. It would be impractical to separately register veterans as voters. So, in 1886 the legislature provided for the management of the memorials by three persons named by local posts of the Grand Army of the Republic. Changes in the Code have been made to include participation by every established war veterans organization since.

This background answers one of the criticisms of the plaintiffs. It is argued by the plaintiffs, though not held by the majority, that the work of the commissioners has little to do with war service or veterans

affairs. The argument is misdirected; it aims at the validity of public purpose war memorials. It is true that the work of the commissioners is rather mundane, not greatly different from the work of large-scale concessionaires. To whatever extent this work is remote from the usual affairs of veterans, it is also remote from the usual affairs of government. In any event the work does have to do with our established scheme of honoring veterans.

Because our nation has depended on the raising of citizen armies we have traditionally expended public funds to foster national military service. *Keogh v. Scott County*, 25 Iowa 567 (1868). Iowa has often provided a reward, in the form of a bonus, for national military service in time of war. Such expenditures are constitutional. *Faber v. Loveless*, 249 Iowa 593, 88 N.W.2d 112 (1958). Other states are divided on the question of whether it is a proper expenditure of public funds to erect and provide a building for the *exclusive* use of veterans organizations. See annot., 162 A.L.R. 943. 77 Am.Jur.2d, Veterans, § 175, pp. 1077–1078; 6 C.J.S. Armed Services § 24, pp. 566–567. The auditorium in this suit is not used exclusively for veterans.

The majority holds the legislative plan for naming commissioners is an unconstitutional delegation of governmental authority. But, given the problem faced by the legislature, and in view of the unique nature and history of war veterans memorials, I fail to see why.

Restraints on delegation of governmental power were explained in *Koelling v. Trustees of Skiff Hospital*, 259 Iowa 1185, 1190–1191, 146 N.W.2d 484, 487–488 (1967). See also 16 Am.Jur.2d, Constitutional Law, § 242, p. 499; 16 C.J.S. Constitutional Law § 133, pp. 560–561 and § 137, pp. 566–570.

Under these authorities the legislature may lawfully delegate to private groups the administrative responsibility of carrying public purposes into effect. The majority's finding that § 37.10 is unconstitutional is on the claim that the section delegates to private groups the authority to name persons who will expend public funds. But the

function of the commission is to manage and control the memorial. § 37.9, The Code. The incidental authority to expend funds, given as one of many powers under the chapter, is only an adjunct authority, necessary for the management of a public trust. It seems likely, in view of the history of challenges to this particular memorial, that management decisions and not fiscal power, precipitated this litigation.

Time was when we paid more than passing deference to the strong presumption of constitutionality of statutes. We said:

". . . One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution. [Authorities.] The legislature is given wide discretion in defining the limits of classes when a statute involves classification of persons or things. If a classification is reasonable and operates equally upon all within the class, it is a valid classification. [Authorities.]" *Keasling v. Thompson*, 217 N.W.2d 687, 689 (Iowa 1974).

Although the majority does not reach the question of whether the challenged statute denied equal protection, I would find no violation. Given the history of the statute, especially the demonstrated willingness of the legislature to include any established veterans organization, I believe the statute does not deny equal protection under the standard described in *Keasling*.

The late Justice Robert H. Jackson said of the United States Supreme Court, shortly before becoming its member, that its "judgment was wrong on most outstanding issues upon which it has chosen to challenge the popular branches." Jackson, The Struggle for Judicial Supremacy, (1941).

Legislation is generally susceptible to improvement because it is rarely, if ever, perfect. Nevertheless, except where we are

driven to it, we should be loath to interfere with the efforts of the legislature. I believe the majority opinion is another unnecessary intrusion into those efforts.

I would reverse.

LeGRAND, J., joins in this dissent.