Ms. Robin F. Green, Prosecuting Attorney Nineteenth Judicial District West Benton County Courthouse 100 NE "A" Street Bentonville, Arkansas 72712
Dear Ms. Green:
I am writing in response to your request for an opinion concerning the composition of the board of the "Benton County Solid Waste Management District." You have attached correspondence with your request that indicates that the Benton County Solid Waste Management District was formed by interlocal agreement pursuant to A.C.A. § 8-6-723(a)(1). Although you have not enclosed a copy of the interlocal agreement for my review, the correspondence indicates that the interlocal agreement currently provides that the board is to consist of the county judge and the appropriate mayors[1] in the county unless the county judge and the mayors "appoint representatives to serve in their stead." The correspondence you have enclosed also notes that the board has adopted "by-laws" that reflect the membership of the board and these by-laws contain a method of selection identical to that contained in the interlocal agreement. The by-laws provide that any change in the by-laws must be made by a two-thirds vote of the entire board membership.
The correspondence you have enclosed also notes that in Benton County, the Bella Vista Property Owners Association ("POA"), has a certified membership greater than 15,000 members, and the Benton County Farm Bureau ("Farm Bureau") is a non-governmental, voluntary organization governed by and representing farm and ranch families with a certified membership greater than 8,500 members. The correspondence indicates that "these two organizations desire membership on the board with full voting rights" and that "Benton County would pay their local contributions to the district."
You pose four questions relating to these facts, as follows:
 1. May the board amend the by-laws to permit representatives other than the county and the municipalities to serve as voting members of the board?
 2. Would the county and the municipalities need to amend the interlocal agreement, if such broader representation is possible?
 3. Would any change in the interlocal agreement require a unanimous vote of the signatories thereto?
 4. If such representation is permitted, may the county pay the local contributions of the POA and the Farm Bureau?
RESPONSE
It is my opinion that the answer to your first question is generally "no." Your first question is somewhat unclear in how the representation of these private entities would be implemented. You do not specify whether these private entities would be responsible for actually appointing members to serve on the board to represent their interests or whether some other method of representation would be employed. In my opinion, however, the by-laws may not simply be amended to permit representatives of the Bella Vista POA and the Farm Bureau to serve as voting members of the Board for two reasons: 1) these private organizations may not be given the power to appoint board members; and 2) amendment of the by-laws alone would not suffice to change the board's membership. Although responses to your remaining questions may be unnecessary in light of my response above, in my opinion the answer to your second question is "yes," any change in the composition of the board would require amendment of the interlocal agreement. In response to your third question, in my opinion the answer is "yes," a change in the interlocal agreement requires unanimous vote of the signatories. With regard to your fourth question, it is unclear what is meant by the term "local contributions." I thus cannot analyze this issue. I will note, however, that public funds may only be expended for public purposes and the Arkansas Constitution prohibits a county from "obtain[ing] or appropriate[ing] money for . . . any corporation, association, institution or individual."
Question 1 — May the board amend the by-laws to permit representativesother than the county and the municipalities to serve as voting membersof the board?
In my opinion the answer to this question is "no."
The relevant statute, assuming the Board was in fact created as specified in the correspondence, is A.C.A. § 8-6-723. That statute appears in a subchapter largely consisting of the codification of Act 752 of 1991. That Act transformed the eight "regional solid waste planning districts" created two years earlier into "regional solid waste management districts" and provided that each shall be governed by a regional solid waste management board. A.C.A. § 8-6-703(a)(1)(A) and (B). The general provisions governing the composition of such boards are found at A.C.A. §8-6-703(b) and (c), which provide in pertinent part as follows:
 (b)(1) Each regional solid waste management board shall be composed of representatives of the counties within the district and representatives of all first class cities, of all cities with a population over two thousand (2,000) according to the latest federal decennial census, and of the largest city of each county within the district.
 (2) The county judge of each county within the district and the mayor of each city entitled to a representative in the district shall serve on the board, unless the county judge or mayor elects instead to appoint a member as follows:
 (A) The county judge, with confirmation by the quorum court of each county within the district, shall appoint one (1) member to the board; and
 (B) The mayor, with confirmation by the governing body of each city entitled to a representative in the district, shall appoint one (1) member.
(c)(1) Each board shall have a minimum of five (5) members.
Your question, however, refers to a more specialized provision for board composition, found in the same subchapter and also passed as part of Act 752 of 1991. Section § 8-6-723 (a)(1) provides as follows:
 (a)(1) In lieu of forming a regional solid waste management district under any other provision of this subchapter, a regional solid waste management district may be created by interlocal agreement of the local governments in any county with a population of at least ninety thousand (90,000) persons and in which there is a permitted landfill on January 1, 1991. The regional solid waste management board of the district shall be established by interlocal agreement.
There is no further guidance on the composition of a board created under this provision, only that it be "established by interlocal agreement." Your question is whether the by-laws of the Benton County Solid Waste Management District may be amended to permit representatives other than the county or municipalities (representatives of the two private organizations mentioned), to serve as voting members of the board.
As an initial matter, the correspondence you have enclosed does not indicate the exact manner in which the by-laws would be amended. It is therefore difficult to analyze the legality of such hypothetical action. To the extent the by-laws would be amended to authorize the private organizations mentioned to appoint board members in a similar manner as the county judge and mayors are authorized to do, in my opinion the answer to your question is "no."
As an initial matter, it is unclear whether the County and cities have been delegated the power to include private entities in the representation of the board. The applicable statute (A.C.A. §8-6-723(a)(1)), does not indicate any such authority, providing only that the board may be formed by "interlocal agreement." It is axiomatic, however, that cities and counties may only undertake actions through an interlocal agreement that they are authorized to undertake singly. See
A.C.A. § 25-20-104 ("[a]ny governmental power, privileges, or authority exercised or capable of exercise by a public[2] agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law . . ."). Some question exists as to whether the County and cities have been delegated the power by the State to provide for the representation of private entities on the board.
More importantly, although the courts are not in complete agreement, it is often held that "private individuals cannot be empowered to select boards to spend public funds, no matter how well qualified they may be."Gamel v. Veterans' Memorial Auditorium Commission, 272 N.W.2d 472, 476, (Iowa Sup. 1978), relying on Hetherington v. McHale, 458 Pa. 479,329 A.2d 250 (1974) (which stated that: "[a] fundamental precept of the democratic form of government imbedded in our Constitution is that the people are to be governed only by their elected representatives"). InHetherington, "some (but not all) members of a committee which allocated funds for agricultural research projects were selected by three agriculture-oriented organizations." Gamel, supra at 476. The court inHetherington struck down the statute, stating: "Appellees contend, however, that because they represent a large number of Pennsylvania farmers, they are more aware of the needs of agriculture than are the popularly selected branches of government. No doubt the organization that designated appellees does have an understanding of farm problems. Nevertheless, claims of expertise do not sap the vitality of the fundamental principle that we are to be governed by our elected representatives in accordance with the Constitution." Id. at 253.
Various constitutional provisions are invoked to challenge private appointive authority. See Gamel, supra at n. 2. Chief among them is the concept of an "unlawful delegation" of legislative authority to private entities. See e.g., Sedlak v. Dick, 256 Kan. 779, 887 P.2d 1119 (1995) (Workers' Compensation Act provision requiring selection of Workers Compensation Board members by committee consisting of representatives chosen by labor union and business association was unconstitutional delegation of legislative power to private organizations, even though actual appointment to committee was made by Secretary of Human Resources; only one name was submitted for each vacancy and Secretary had no discretion to reject or substitute for persons selected by union and association). Courts in some instances distinguish statutes providing for nomination by private entities, of several persons, in a process which leaves discretion in the appointing officers. Id. See also State ex rel.James v. Schorr, 45 Del. 18; 65 A.2d 810 (1948). See also generally,McCarley v. Orr, 247 Ark. 109, 445 S.W.2d 65 (1969) (holding inapplicable to all but initial appointments a statute requiring Governor to make appointments to Real Estate Commission from list submitted by Real Estate Association, but stating that even if it was applicable it did not specify the number of names to be submitted and only one name could not be inferred because "in that view the appointment would be made by the Association rather than by the Governor"); Ellis v. Rockefeller,245 Ark. 53, 431 S.W.2d 848 (1968) (stating that: "[t]he law generally is that the choice of a person to fill an office is the essence of an appointment and that the selection must be the discretionary act of the officer or board clothed with the power to do the appointing"); andValidity of Delegation to Private Persons or Organizations of Power toAppoint or Nominate to Public Office, 97 A.L.R.2d 361 (1964).
Again, you have not specified the exact method by which these private entities would be afforded representation on the board. To the extent the current interlocal agreement or an amendment to the agreement gives the County Judge and mayors authority to appoint members of their communities to serve on the board, there may well be no prohibition against the selection of persons keenly connected to the organizations you mention. In my opinion, however, the answer to your first question concerning service of representatives of "other than the county and the municipalities" is "no" based both upon the discussion above, and on the fact that any such change could not be effected by a simple amendment of the by-laws as your first question suggests. This issue is discussed in my response to your second question below.
Question 2 — Would the county and the municipalities need to amend theinterlocal agreement, if such broader representation is possible?
My answer to your first question above may render this question moot. I will note, however, that the applicable statute, A.C.A. § 8-6-723(a)(1), states that the "board of the district shall be established by interlocal agreement." Any change in the composition of the board must therefore be reflected in the interlocal agreement.
Question 3 — Would any change in the interlocal agreement require aunanimous vote of the signatories thereto?
Again, this question may be moot in light of my answer to your first question. I will note, however, that although the statutory provisions governing interlocal agreements do not expressly address their amendment (see A.C.A. §§ 25-20-101—108 and A.C.A. § 14-14-910), general principles of contract law would dictate that any change in such an agreement either be as provided for in the existing document, or agreed to by all signatories. See e.g. Van Camp v. Van Camp, 333 Ark. 320, 969 S.W.2d 184
(1998) ("fundamental principles of contract law require that both parties to a contract agree to any modification of the contract"). Again, additionally, the relevant statute provides that the board shall be established by interlocal agreement "of the local governments. . . ."See A.C.A. 8-6-723(a)(1). In my opinion, therefore, the answer to this question is generally "yes."
Question 4 — If such representation is permitted, may the countypay the local contributions of the POA and the Farm Bureau?
I am uncertain what is meant by "local contributions," as used in your question. This term is not used in the applicable subchapter and as such I am unable to analyze this issue. I will note, however, that Arkansas Constitution, art. 12, § 5 provides as follows:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
This provision must be borne in mind when addressing any such issue.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Reference is made in the correspondence to municipalities in the county with a population of over 2,000. Cf., A.C.A. § 8-6-703(b)(1) (providing in the general portion of the subchapter for each board to be composed of representatives of the counties within the district and representatives of all first class cities, of all cities with a population of over two thousand (2,000) . . . and of the largest city of each county within the district."
[2] I assume that the private entities you mention would not actually be parties to the interlocal agreement. The applicable subchapters governing interlocal agreements restrict membership to public entities.See A.C.A. § 25-20-104 and § 14-14-910.